**In re Roger McEwen MOORE, Debtor.**

**Bankruptcy No. 3–83–01378.**

United States Bankruptcy Court,
E.D. Tennessee.

July 1, 1985.

Miller & Martin, Lawrence R. Ahern, III, Trustee, Shelley D. Rucker, Chattanooga, Tenn., Hodges, Doughty & Carson, Dean B. Farmer, Knoxville, Tenn., for trustee.

Weill, Weems & Kennedy, Kyle R. Weems, Chattanooga, Tenn., for debtor.

W.F. Shumate, Jr., Knoxville, Tenn., for debtor, Jane Ann Moore, FlaDevCo, Inc., Charles Gregory Moore, Michael D. Moore, and Roger M. Moore, Jr.

Morton, Lewis, King & Krieg, Deborah C. Stevens, Knoxville, Tenn., for Federal Deposit Ins. Corp.

Barbara J. Lukes, Knoxville, Tenn., Staff Counsel for Federal Deposit Ins. Corp.

## MEMORANDUM ON MOTION TO APPROVE COMPROMISE OF ADVERSARY PROCEEDINGS

CLIVE W. BARE, Bankruptcy Judge.

Lawrence R. Ahern, III, debtor's trustee in bankruptcy, and the Federal Deposit Insurance Corporation (FDIC), the major creditor, jointly seek court approval of a proposed compromise, pursuant to Bankruptcy Rule 9019. The compromise provides in part for the dismissal of complaints objecting to discharge filed by the trustee and FDIC. No objection to the compromise has been filed; the trustee and FDIC insist it is in the best interest of creditors. Nonetheless, the court declines to approve the compromise.

## I

On July 6, 1983, the debtor filed a voluntary chapter 11 petition. On the motion of FDIC and three bank creditors, pursuant to 11 U.S.C.A. § 1104 (1979), the court appointed Lawrence R. Ahern, III, as trustee in debtor's chapter 11 proceeding. On July 26, 1984, debtor requested conversion of his case to chapter 7. Also on July 26, 1984, the court entered an order for relief under chapter 7 and an order appointing Ahern as trustee in the chapter 7 proceeding.

The trustee has filed three adversary proceedings seeking to avoid numerous prepetition transfers by the debtor, to family members and others, on the theory the transfers were fraudulent.[1] The total recovery sought by the trustee exceeds $2,500,000.

Separate objections to discharge have been filed by the trustee and FDIC.[2] Both allege that the debtor transferred property, before the date of the filing of his petition, with actual intent to hinder, delay, or defraud creditors. 11 U.S.C.A. § 727(a)(2) (1979). The trustee also alleges that the debtor has failed to satisfactorily explain loss of assets. 11 U.S.C.A. § 727(a)(5) (1979).

The essence of the compromise is the withdrawal of both objections to discharge and dismissal, with prejudice, of the other three adversary proceedings commenced by the trustee in exchange for cash and property with a combined approximate value of $1,300,000, to be paid to the estate by debtor's wife, plus certain corporate stocks.[3] Additionally, the debtor, a former director of City and County Bank of Anderson County, a failed banking institution, agrees to consent to entry of a $40,000,000 judgment in favor of FDIC in a district court case [4] against the former officers and directors of the bank. Further, debtor agrees to give notice to Employers Insurance of Wausau, indemnitor of the officers and directors of City and County Bank of Anderson County, of his consent to the entry of the $40,000,000 judgment and make demand on Wausau to approve the terms of the consent judgment and pay the limits of the policy on his behalf. Debtor and the trustee propose to transfer to FDIC any claim either has under the Wausau policy; FDIC agrees any indebtedness of the debtor evidenced by the $40,000,000 judgment is discharged. Certain warranties pertaining to disclosure of assets are recited in the compromise. Also, the debtor agrees that either the trustee or FDIC may move to renew their objections to discharge if his representations relative to property of the estate are materially incorrect.

## II

Section 727 of Title 11 of the United States Code enacts in part:

*Discharge*

(a) The court shall grant the debtor a discharge, unless—

(1) the debtor is not an individual;

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed

---

1. Alternatively, the trustee contends that some of the transfers he seeks to avoid were preferential.

2. FDIC also seeks a determination of nondischargeability, under 11 U.S.C.A. § 523(a)(2) (Supp.1985), of a portion of its claim.

3. The details of the proposed compromise are recited in the "Settlement Agreement" filed June 14, 1985.

4. See *Federal Deposit Insurance Corporation v. Butcher,* Civ. No. 3–84–1020 (E.D.Tenn. filed Dec. 19, 1984).

to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

(B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

(8) the debtor has been granted a discharge under this section, under section 1141 of this title, or under section 14, 371, or 476 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition;

(9) the debtor has been granted a discharge under section 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least—

(A) 100 percent of the allowed unsecured claims in such case; or

(B)(i) 70 percent of such claims; and

(ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort; or

(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter.

11 U.S.C.A. § 727(a) (1979 & Supp.1985). This section codifies the Congressional determination of the conditions a chapter 7 debtor must meet to obtain a bankruptcy discharge. It is the duty of the bankruptcy court to grant or deny a discharge based on these conditions.

Commenting on the discharge provision of the Bankruptcy Act of 1898 shortly before the effective date of the Bankruptcy Reform Act of 1978, the Supreme Court stated:

Through discharge, the Bankruptcy Act provides "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt," *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). By seeking discharge, however, respondent placed the rectitude of his prior dealings square-

ly in issue, for, as the Court has noted, the Act limits that opportunity to the "honest but unfortunate debtor." *Ibid.* Section 14 of the Act, 11 U.S.C. § 32, specifies that a *debtor* may not obtain a discharge if he has committed certain crimes or offenses.

*Brown v. Felsen,* 442 U.S. 127, 128–29, 99 S.Ct. 2205, 2207–08, 60 L.Ed.2d 767 (1979) (emphasis in original).

Discharge, the principal objective of a chapter 7 debtor, is a statutory right involving public policy considerations. It is *not* a proper subject for contractual negotiation. *See In re Levy,* 127 F.2d 62 (3rd Cir.1942) (offer of $5,000 by third party to compromise turnover proceeding commenced by creditors' committee on condition there would be no opposition to bankrupt's discharge was illegal); *United States v. Hampton,* 47 B.R. 47, 50 (Bankr. N.D.Ill.1985 (Congress only has the power to dictate terms for discharge in bankruptcy, which is a privilege, not a right). Discharge "is refused to a dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future. In a sense the question has passed beyond the creditors and is one of public policy...." *In re Hammerstein,* 26 Am.Bankr.Rep. 757, 758 (2d Cir.1911).

■ During his testimony supporting the compromise, which represents a bargained for exchange, the trustee spoke of the debtor "buying his discharge." Because it involves questions of public policy previously determined by the Congress, a discharge in bankruptcy is not an appropriate element of a quid pro quo. Tying withdrawal of objections to discharge to the settlement of other actions is contrary to public policy. Under no circumstances, not even where the intent is innocent, may a debtor purchase a repose from objections to discharge. A discharge in bankruptcy depends on the debtor's conduct; it is not an object of bargain.

■ Further, the propriety of this court's approval of debtor's consent to entry of a $40,000,000 judgment in the FDIC district court case is questionable. But it is not necessary to decide that question, since the court declines to approve the compromise on the basis that withdrawal of the objections to discharge as an element of the compromise contravenes public policy.[5]

---

5. The merit of the objections to discharge by the trustee and FDIC remains to be determined. The court's refusal to approve the compromise is in no way a reflection upon the merit of those objections.