**In re Peter F. NICOLOSI, Sr., Maxine Bernard Nicolosi, Debtors.**

**Sylvery Guilbeau RUSSO, Plaintiff,**

**v.**

**Peter F. NICOLOSI, Sr., Maxine Bernard Nicolosi, Defendants.**

**Bankruptcy No. 484–0148–LO–7.
Adv. No. 485–0014.**

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette/Opelousas Division.

May 27, 1988.

John Torian, Lafayette, La., for Mrs. Russo, plaintiff.

Gerald H. Schiff, Opelousas, La., Bob F. Wright, Floyd LeBleu, Lafayette, La., for

Peter and Maxine Nicolosi, debtors/defendants.

Wayne A. Shullaw, Lafayette, La., for creditor, First Nat. Bank of Lafayette.

Thomas D. Brumbaugh, Lafayette, La., for creditor, Ford Motor Credit Co.

Christopher L. Zaunbrecher, Lafayette, La., for creditor, C.M. Miciotto & Sons, Inc.

James T. Guglielmo, Opelousas, La., for creditor Glenn Cortez.

## MEMORANDUM OF BENCH DECISION ON PROPOSED COMPROMISE, MOTIONS TO SUBSTITUTE AS PARTIES–PLAINTIFF, AND MOTIONS FOR ATTORNEY FEES

W. DONALD BOE, Jr., Bankruptcy Judge.

This adversary proceeding objecting to the debtor's discharge and alternatively objecting to the dischargeability of a particular debt came on for trial before my predecessor, the Honorable Rodney Bernard, Jr. In the complaint plaintiff Sylvery Guilbeau Russo sought not only denial of discharge under section 727(a)(2) of the Bankruptcy Code but also non-dischargeability of particular debts under section 523(a)(2)(A), obtained by false pretenses, false representation, or actual fraud, and under section 523(a)(5) for debts in the nature of alimony, maintenance, or support. Judge Bernard upheld the section 727 objection, denying the discharge of the debtor/defendants Peter F. Nicolosi, Sr., and Maxine Bernard Nicolosi.

Judge Bernard's decision was affirmed by District Judge John M. Shaw *sub nom Nicolosi v. Russo*, C.A. No. 87–0439, and was pending before the U.S. Court of Appeals, when the parties indicated a desire to settle. When information of a proposed compromise reached the District Court, Judge Shaw on October 27, 1987 referred it to the Bankruptcy Court for further proceedings upon proper application of the parties.

After notice to creditors, this Court heard the arguments for approval of compromise along with various motions to substitute as parties-plaintiff which were filed by objecting creditors. The Court DISAPPROVED the proposed compromise, and GRANTED the creditors' motions to substitute as parties-plaintiff if Mrs. Russo does not defend the appeal. The Court also DENIED a request for attorney's fees by Mrs. Russo. This memorandum decision is intended only to memorialize the reasons for decision and is not intended as a substitute for the Court's bench decision for purposes of review.

Bankruptcy Rule 7041 permits a plaintiff to dismiss a complaint objecting to a debtor's discharge only on notice to the trustee and only on order of the court containing terms and conditions that the court deems proper. In addition, Bankruptcy Rule 9019(a) provides that on motion by the trustee and after a hearing *on notice* to creditors, the debtor and indenture trustees as provided in Rule 2002(a) and to such other entities as the court may designate, the court may approve a compromise or settlement. Rule 2002(a)(3) provides for twenty-day notice by mail to the debtor, the trustees, and all creditors and indenture trustees [1] of hearing on approval of a compromise or settlement of a controversy.

On December 4, 1987, this Court conducted a telephone status conference with plaintiff's and defendants' attorneys. They portrayed the compromise as generally affecting only the interests of plaintiff and defendants. I directed that they file a motion with thorough briefing regarding procedures on remand, which would be heard on December 14. At the same time I expressed a tentative belief that Rule 2002(a)(3) would eventually require that notice of the compromise be given to the trustee and all creditors. The minute entry embodying these directives was served on plaintiff's and defendants' attorneys.

Notwithstanding service of this minute entry, for reasons which this Court does not understand, none of the attorneys supporting the compromise appeared at the hearing and no brief was received. Ac-

---

1. There are no indenture trustees involved in this bankruptcy case.

cordingly, on December 14 this Court dismissed the hearing on procedures; set a hearing on the proposed compromise for January 21, 1988; ordered plaintiff and defendants to serve a notice of the compromise, with the compromise attached, by no later than December 23 on the entire mailing matrix (which would include service on the trustee as well as all creditors); and required any party wishing to support or challenge the compromise to file a memorandum by no later than January 10, 1988. These requirements were set forth in a minute entry designated as an order of the Court.

Before the January 21 hearing a number of creditors filed motions seeking to substitute as parties-plaintiff for Sylvery Guilbeau Russo. (These creditor are hereinafter collectively referred to as "the Creditors.") At the hearing, it became apparent that the counsel for proponents of the compromise were not adequately prepared. Both the Court and the Creditors believed there was need for an evidentiary hearing concerning the motivation for the proposed settlement. (*See* Jan. 21, 1988 tr. pp. 44, 48, 50–51, and 54.) A major concern was the apparent need to determine whether Mrs. Russo was compromising the denial of discharge to receive more than she would have received had the objections to dischargeability under section 523 been decided in her favor. (*See, e.g.,* Jan. 21 tr. p. 41.)

Mrs. Russo's counsel argued that the compromise reflected a scaled-down version of what she would have got if Judge Bernard had found that the debts owed her by the debtors stemming from her 1979 divorce from Mr. Nicolosi were non-dischargeable spousal support under section 523(a)(5). The Court did not believe argument alone could resolve the issue and believed that evidence was needed as well as additional briefing on the compromise and substitution-of-parties issues. The Creditors' attorneys also raised questions such as "What's in it for Mr. Nicolosi?" and whether the Court could approve any settlement at all following Judge Bernard's decision and the District Court's affirmance.

Faced with the efforts of the Creditors to obtain substitution as parties-plaintiff, plaintiff filed a motion asking the Court in exercise of its equitable powers to require that the Creditors pay Mrs. Russo's attorney's fees in what I would refer to as "the price of admission to the Circuit Court of Appeals". Plaintiff argued that she had spent over $78,000.00 pursuing her adversary complaint and that the Court should order the Creditors who sought to substitute as parties-plaintiff to reimburse. Owing to the Court's crowded docket and to previous commitments of various counsel, the hearing was continued to April 14, 1988.

The decision of this Court is based upon the evidence and argument at the April 14 hearing, the argument at the January 21 hearing, and a complete review of all documents in the adversary file, including the 1986 transcripts of the trial before Judge Bernard. This Court concludes (1) that the proposed settlement agreement should not be approved; (2) that there are no modified terms or conditions under which the proposed settlement could be approved; (3) that the Creditors have a right to be substituted as parties-plaintiff if Mrs. Russo does not pursue the appeal before the Fifth Circuit; and (4) that this Court cannot shift attorney fees incurred by Mrs. Russo to any creditors who may wish to be substituted as parties-plaintiff.

The compromise proposed that the debtors repay Mrs. Russo certain debts (in a sense treating them as non-dischargeable), namely: (1) paying $409,000.00 over fifteen years at a rate of $1,500.00 per month for the first five years and $2,658.33 for the remainder of the term, with a note to be secured by certain property; (2) bringing current the mortgage note on Mrs. Russo's home, which would cost about $4,000.00; and (3) assigning $100,000.00 to Mrs. Russo in death benefits. In return Mrs. Russo would dismiss her objection to the discharge of other debts owed to her and other creditors.

The compromise is not approved because this Court (as explained hereinafter) finds no basis in its review of the entire record for concluding that any debts to Mrs. Russo are nondischargeable under section 523(a)(2) (falsity or fraud) or section 523(a)(5) (spousal support). Debts to her cannot therefore be singled out for repayment while other debts are discharged.

Judge Bernard's Reasons for Judgement of August 20, 1986 found that Peter and Maxine Nicolosi's transfer of their home and insurance business to a trust while retaining equitable interest in this property and failing adequately to fund the trust was a "continuing concealment" and constituted a transfer of property under section 727(a)(2)(A) made with intent to hinder, delay, and defraud creditors and warranted a denial of discharge. While Judge Bernard found it unnecessary to consider the exceptions to discharge under section 523 because a discharge was being entirely denied, he fleetingly suggested that the debt to Mrs. Russo had elements of both alimony (non-dischargeable under section 523(a)(5)) and property settlement (dischargeable) but that "there is not, however, sufficient evidence in the record to determine which is which". Judge Bernard made no reference to Mrs. Russo's cause of action under section 523(a)(2) for alleged false pretenses, false representation, or actual fraud. After review of the entire record in this adversary proceeding, this Bankruptcy Judge concludes that Mrs. Russo failed to carry her burden of proof as to the exceptions to discharge under both section 523(a)(2) and (a)(5).

Regarding the section 523(a)(5) cause of action, the 1988 hearings have failed to shed any further light on what portion, if any, of the debt to Mrs. Russo constitutes an obligation in the nature of spousal support. At the April 1988 hearing, Mrs. Russo testified about her current financial circumstances.[2] This Court believes Mrs. Russo's testimony has at best limited relevance to the section 523(a)(5) issue of spousal support or to the issue of whether the proposed compromise is reasonable. Some evidence of her need and her ex-husband's means was revealed, however.

Mrs. Russo testified that she was three payments behind on her $144,000 house note, which payments Mr. Nicolosi assumed in the community property settlement. The payments due were about $1,300.00 each and had not been paid by Mr. Nicolosi since the approximate time of his bankruptcy filing in 1984. Her house located at 108 Crescent Ridge Place in Lafayette, Louisiana was the marital residence prior to her divorce from Mr. Nicolosi in 1979. The evidence presented to Judge Bernard in 1986 as well as to me in 1988 indicates that Mrs. Russo (the former Mrs. Nicolosi) and Mr. Nicolosi led a very affluent lifestyle. For example, Mr. Nicolosi had an income of about $880,000.00 in 1980. (See June 24, 1986 tr. p. 4, 11. 9–13.) This suggests that the house located at 108 Crescent Ridge Place is a substantial residence and that there is substantial equity in the house even with the current depression in Lafayette real estate values. Mrs. Russo's ex-husband, Mr. Nicolosi, and his second wife Maxine borrowed $861,200.00 to finance construction of another residence, which ultimately cost more than $1,000,000.00, including draperies and the like.

Mrs. Russo, a college graduate, is not currently employed and has not been engaged in any profitable occupation for a number of years. She testified that she did not know the income of her present husband. Her explanation for this is that she was not brought up to inquire into financial matters. Her ostensible lack of knowledge of financial matters such as her current husband's income is less than convincing, particularly when she portrays herself as being needy. In all probability, Mrs. Russo's financial resources are considerably reduced below those experienced in the late 1970s when she was married to Mr. Nicolosi; a similar probability can be assigned to the financial condition of Mr. Nicolosi who

---

2. Mr. Nicolosi did not appear to testify at the hearing; he was said to be absent on business.

leases his current residence.[3] Mrs. Russo, age 47, has experienced some health problems; however, the most reasonable inference after the hearings and review of the entire record is that Mrs. Russo basically has not needed to work. While she claimed that her only asset was her house, she provided no testimony as to its value and provided no balance sheet information to show her financial condition.

Mrs. Russo's April 14th testimony in support of the proposed compromise was brief, and her attorney asked the Court to consider portions of the record in this adversary proceeding. This has been done; indeed this Court has reviewed the entire adversary record. It is unable to find justification for the proposed settlement.

The purpose of reviewing the entire record was to determine whether the proposed settlement now before this Court ought to be approved. This Court concludes that Mrs. Russo so vigorously pursued a section 727 cause of action because her position under section 523 was perceived to be very weak or without merit. Her success under section 727 cannot now be used to obtain unwarranted concessions that would not be available to her under section 523.

Mrs. Russo's section 523(a)(2) claim was essentially that execution of the community property agreement was the result of false pretenses, false representation, or actual fraud. Judge Bernard did not mention this cause of action in his Reasons for Judgment. This Court concludes that her section 523(a)(2) cause of action is without merit. The record shows that Mrs. Russo was represented by an attorney who conducted considerable investigation into Mr. Nicolosi's assets and holdings before advising her to sign the community property settlement agreement which he prepared. (*See* June 24, 1986 tr. pp. 133–134.)

As to the section 523(a)(5) issue of support, Mrs. Russo's own testimony before Judge Bernard strongly suggests that the parties to the community property settlement agreement intended it to be precisely that: a property settlement. Regarding why the property settlement provided her with periodic payments, Mrs. Russo said,

> [B]ut the first thing when Mr. Cole [Mrs. Russo's attorney] spoke of settlement, I wanted to go ahead and put the money that was *my share* into C.D.'s and money markets. And I was told that, no, that was impossible. Mr. Nicolosi couldn't do that. It had to be spread over a period of years.

June 24, 1986, tr. p. 135, 11. 19–25 (emphasis added). Mrs. Russo testified that she did not demand that Mr. Nicolosi pay money in a lump sum because Mr. Nicolosi did not have the cash to give. "Mr. Nicolosi's money was all on paper." (p. 136.)

There was no provision in the property settlement for payments to end on remarriage. While Mrs. Russo claimed that at the time of the property settlement she did not intend to remarry, a fair inference can be drawn the record that at least the possibility of remarriage was not far from her mind. Evidence presented both to me and to Judge Bernard shows that Mrs. Russo was dating her present husband who himself, as a witness, signed the property settlement agreement. Remarriage could well have terminated any alimony. Further, Mrs. Russo did not pay income tax as she would have on alimony. (June 24, 1986, tr. p. 141.) She reported the interest on the payments as income, but not the principal. The reasonable inferences to be drawn from the testimony just cited is that the parties did not intend the periodic payments to constitute alimony and that Mrs. Russo did not treat them as alimony either before or after executing the community property agreement. The payments are therefore not non-dischargeable support.

Plaintiff's post-hearing memorandum cites a number of authorities which this Court wishes to address. *In re Bishop*, 13 B.R. 304, 4 C.B.C.2d 1386, Bankr.L.Rep.

However, Mr. Nicolosi's counsel was present.

**3.** The Court does not, however, believe that Mr. Nicolosi's current financial circumstances are relevant to the issue of whether any spousal support debts to Mrs. Russo are nondischargeable under Section 523(a)(5).

para. 68,283 (Bkrtcy.E.D.N.Y.1981), is cited for the proposition that section 523(a)(5) sets out a major policy concern of Congress to protect ex-spouses and children of a debtor. This general principle or policy concern is correctly described but does not directly assist determining whether the periodic payments under the community property settlement are non-dischargeable support or dischargeable property-settlement obligations. Plaintiff cites *Stuhley v. Hyatt,* 667 F.2d 807, Bankr.L.Rep. para. 68,588 (9th Cir.1982), for the proposition that a bankruptcy court as a court of equity must be guided by equitable principles in the effectuation of the policy of the Bankruptcy Act. This Court recognizes that it must be guided by equitable principles where appropriate. For the reasons otherwise stated in this decision, however, equitable principles do not entitle Mrs. Russo to the relief she seeks by approval of the compromise.

Plaintiff also cites *In re Short,* 60 B.R. 951 (Bkrtcy.M.D.La.1986), a decision by Judge Steen. The purpose of citing *Short* is not quite clear. Perhaps plaintiff infers from *Short* that a section 727 action can be settled for what Judge Steen termed "an advantage". Judge Steen stated, "There appears to be no jurisprudence extant determining whether it is appropriate to dismiss a complaint in which the plaintiff receives an advantage." (As noted hereinafter, there is some extant jurisprudence on this issue, and it apparently does not favor plaintiff's position.)

Judge Steen in *Short* did not expressly decide a plaintiff could in fact receive an advantage for dismissal. Judge Steen instead used the procedures of Bankruptcy Rule 7041, which together with the related commentary reads as follows:

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee and only on order of the Court containing terms and conditions which the court deems proper.

The advisory committee note states:

Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rules or order have required the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration for the withdrawal of the objection. By specifically authorizing the court to impose conditions in the order of dismissal this rule permits the continuation of this salutary practice.

Bankruptcy Rule 7041, which specifically addresses complaints objecting to discharge, does not clearly authorize settlement (whereby something of value is given and received). It allows "dismissal" of a complaint, rather than "compromise" as under Bankruptcy Rule 9019, or "compromise or settlement of a controversy" as under Rule 2002(a)(3).

There is limited jurisprudence to the effect that an objection to discharge cannot be compromised, and this Court has been unable to find any case law that an objection to discharge can be compromised. *In re Moore,* 50 B.R. 661, 13 B.C.D. 363, Bankr.L.Rep. para. 70,639 (Bkrtcy.E.D. Tenn.1985), a decision by Bankruptcy Judge Clive Bare, held that objections to discharge could not be compromised for money amounts. He said: "Tying withdrawal of objections to discharge to the settlement of other actions is contrary to public policy. Under no circumstances, not even where the intent is innocent, may a debtor purchase a repose from objections to discharge. A discharge in bankruptcy depends on the debtor's conduct; it is not an object of a bargain." 50 B.R. at 664. Judge Bare cited *In re Levy,* 127 F.2d 62 (3rd Cir.1942), rejecting a creditor offer to compromise a turnover proceeding for $5,000 on the condition that there would be no opposition to discharge. *Levy* in reversing a District Court stated:

> Any offer of that character is wholly illegal. The reason is plain. Discharge is not personal to the creditors. It is general to the public.... This general

protection cannot be waived by particular creditors whose private greed outruns their community spirit.

Collier also expresses the view that "[i]t is improper for a debtor to offer or for a creditor to receive any consideration for the doing or forbearance of any act," and states that "[t]he fraudulent payment or receipt of consideration for withdrawal of a complaint objecting to discharge, *i.e.*, the dismissal of this type of adversary proceeding, is a criminal offense." 9 *Collier on Bankruptcy* para. 7041.03 (15th ed. 1988) (p. 7041–4). This Court believes there is some support for Collier's position in 18 U.S.C. sec. 152, sixth unnumbered paragraph, which subjects to criminal penalties "whoever knowingly and fraudulently gives, offers, receives or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof, for acting or forebearing to act in any case under Title 11...."

Whether there can ever be a compromise of an objection to discharge that would involve receipt of compensation or remuneration by a creditor need not be decided here in view of this Court's conclusions regarding the lack of any meritorious exception to discharge under section 523.

Plaintiff argues that denying approval of the proposed settlement would deny the debtors the benefits of the "fresh start" policy of the Bankruptcy Code. This argument overlooks the intention of Congress to provide a fresh start only for an "honest debtor". One who has merited a denial of discharge under section 727 is clearly not the "honest debtor" that Congress had in mind. Judge Bernard denied the debtors' discharge and Judge Shaw affirmed. It would be inappropriate for this Court to reassess their determinations with respect to the denial of discharge, and this Court has not done so. A compromise that would defeat that ruling cannot be approved.

■ This Court holds that the creditors of the debtors Peter Nicolosi and Maxine Nicolosi can step in the shoes of Mrs. Russo if she abandons the proceeding and can substitute themselves as parties-plaintiff. *Austin Farm Center v. Harrison (In re Harrison)*, 71 B.R. 457 (Bkrtcy.D.Minn. 1987), is unpersuasive authority for plaintiff's argument that the Creditors cannot substitute as parties-plaintiff. In *Harrison* the court denied a motion to amend a section 727 complaint to pursue a different cause of action under section 523. In the case at bar, the Creditors seek to pursue precisely the same section 727 cause of action originally pleaded and litigated before Judge Bernard and appealed to the Fifth Circuit. *Harrison* furthermore points out that a section 523(a) plaintiff seeks "to vindicate only its own debt," while a plaintiff in a section 727 objection to dischargeability assumes "something of the role of a trustee." 71 B.R. at 459. The court continued:

> Section 727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engage in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on, or injury to, a single creditor. Because exceptions to discharge and objections to discharge are two completely distinct and radically-different causes of action, proceedings involving them are in essence separate lawsuits even though they may be pleaded jointly in the same complaint.

71 B.R. at 459 (footnote omitted). In the case at bar no amendment of the complaint is needed. Different creditors simply seek to pursue on appeal the same cause of action that was originally timely filed.

*In re Fehrle*, 34 B.R. 974 (Bkrtcy.W.D. Ky.1983), involves the same issue as *Harrison*—substitution of a considerably different cause of action, not substitution of plaintiffs to pursue the originally filed cause of action. Under *Harrison*, a creditor objecting to discharge under section 727 assumes the role of a trustee. The *Short* decision specifically recognizes the right to substitute parties. Before allowing dismissal of an objection to discharge, Judge Steen required notice to all creditors and parties in interest in order to "provide all interested parties with the right to object to the dismissal and with the right to continue prosecution of the complaint to deny

the debtor's discharge if they wish to do so." [4] *Short*, 60 B.R. at 953. The Fifth Circuit in *Mazur v. Hirsch Shoe Co.*, 46 F.2d 973 (5th Cir.1931), has held essentially that other creditors can take up the cudgel where a creditor opposing discharge declines to go further:

> [W]hile it is plain that the creditors may at any time while the cause is still pending, and before final action is taken on it, decline to go further with their opposition to a discharge, it is also true that in such event any other creditor may, in the discretion of the judge of the court, be allowed to proceed under the specifications already filed by those withdrawing.

*Mazur*, 46 F.2d at 974. *See also Cunningham v. Elco Distributors, Inc.*, 189 F.2d 87, 25 A.L.R.2d 1008 (6th Cir.1951), stating, "The opposition to the discharge of a bankrupt interposed by any creditor upon a lawful ground inures to the benefit of all creditors."

■ Plaintiff's motion for attorney fees is denied in accordance with *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Under *Alyeska* parties in federal courts must bear their own cost of litigation absent (1) enforceable contractual provisions; (2) willful violation of the court's orders; (3) oppressive, bad faith, or vexatious litigation; (4) in diversity cases, a basis in state law for cost shifting; or (5) in non-diversity of citizenship cases like this one, specific authorization by federal statute. Much private litigation has some tendency to confer public benefits. The theories of Mrs. Russo's counsel bear a close resemblance to private attorney general theories unsuccessfully espoused in *Alyeska* that conferring a public benefit should entitle a prevailing party to attorney fees. Those theories if adopted would have left the federal judiciary in a quagmire of making case-by-case social and public policy judgments concerning how much benefit is conferred by a prevailing litigant, with the ultimate, inconsistent results possibly depending on personal views rather than on more systematic norms established by Congress after broader, legislative inquiry and investigation into what places various litigative results should occupy on a hierarchy of public values. Even where fees are shifted in the state of the existing law, they are shifted from a "prevailing party" to a losing party. Mrs. Russo is not a "prevailing party" *vis-a-vis* the Creditors who seek to substitute as parties-plaintiff.

For the foregoing reasons the Court will not approve the compromise of the denial of discharge in exchange for the benefits

4. With these safeguards available, I have extreme difficulty with the holdings in *Moore* and *Levy, supra*, that a section 727(a) objection to discharge cannot be compromised. The purposes of the justice system are the peaceful, just, speedy and inexpensive resolution of disputes. The law normally favors compromise to achieve these ends. If voluntary compromise can be effected, the justice reached by the parties themselves may be superior to that judicially imposed. Compromise also reduces burdens on the public treasury and lessens judicial backlog. Reduction in backlog allows cases to be brought to trial before the memories of witnesses dim and documents are lost, thus brightening the prospect that, in other cases awaiting trial, justice will truly be done. Compromise also reduces the costs and burdens that society imposes on "innocent bystanders", nonlitigants whose documents or testimony is subpoenaed.

The practical effect of determining that a section 727(a) objection to discharge can never be compromised could severely chill the rights of plaintiffs to allege section 727(a) causes of action. Once the adversary complaint alleged such a cause of action, there presumably could be no compromise of the complaint even when other, meritorious causes of action were alleged in the same complaint, *e.g.*, exceptions to discharge under section 523(a). Even if a plaintiff bifurcated his causes and dismissed the section 727 cause under Rule 7041 and then settled the section 523 action, a court could not determine whether an advantage was given for the dismissal of the section 727 objection to discharge. Unless the plaintiff simply dismissed, litigants would be forced to go to trial whenever section 727(a) and section 523(a) causes of action were alleged by the same plaintiff. This Court has well over one hundred such hybrid adversary complaints currently pending. There is a simple explanation for this. Even though section 727(a) and section 523(a) causes of action are distinct, and with differing burdens of proof, they can have many factual elements in common. *Compare* section 727(a)(4) with section 523(a)(2) and (a)(4) *and* section 727(a)(2) and (a)(3) with section 523(a)(6). Without the opportunity to compromise, a litigant is left with "no way out" except to give up or to pursue the martial arts of litigation to their ultimate conclusion.

sought by the plaintiff. Additionally, in view of the general nature of the denial of discharge, the Creditors may substitute as parties plaintiff to oppose the appeal by the debtors should Mrs. Russo abandon the proceeding. Finally, no attorneys fees are awarded Mrs. Russo.