**In re Ronald Allen TRAXLER, a/k/a Ron Traxler, a/k/a R. Traxler, a/k/a Ronald A. Traxler, Debtor.**

**Joyce Lindauer, Chapter 7 Trustee, Plaintiff,**

**v.**

**Ronald Allen Traxler, Defendant.**

**Bankruptcy No. 99–43915–S.**
**Adversary No. 00–4056.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Feb. 14, 2002.

Joyce W. Lindauer, Trustee, Dallas, TX, for Chapter 7 Trustee.

Martin K. Thomas, Thomas & Sobol, Dallas, TX, for Debtor.

Lisa L. Lambert, Tyler, TX, for U.S. Trustee.

## MEMORANDUM OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court is the Motion to Settle and Compromise Objection To Discharge filed by Ronald Allen Traxler and Joyce Lindauer, Trustee. Ronald Allen Traxler, the Defendant in the Adversary Proceeding and Debtor in the above-captioned bankruptcy case ("Debtor") and Joyce Lindauer, the Chapter 7 Trustee ("Trustee") (hereinafter "Movants") seek this Court's approval of their proposed settlement agreement. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed. R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Following the Debtor's voluntary petition for relief under Chapter 7, the bar date for filing objections to the Debtor's discharge or to the dischargeability of particular debts was extended to June 22, 2000 on motion of the Trustee. On June 22, 2000, Michael Nathan, Creditor, and the Trustee filed separate Complaints objecting to the discharge of the Debtor pursuant to 11 U.S.C. § 727.[1] Mr. Nathan's adversary was dismissed in October, 2000. The basis of the Trustee's objection to the Debtor's discharge under § 727 was that the Trustee believed that the Debtor transferred assets from his prior business to his spouse's current business and that such business equipment was being used

---

1. On June 22, 2000, John Drain initiated an adversary proceeding under § 523. An order of dismissal was entered on October 4, 2000.

by the latter. The Trustee also complained that the Debtor had not provided records concerning his financial affairs and that, by and through his business, he received "substantial" sums of money in the years preceding the filing of the Complaint. The Complaint recites that at his § 341 meeting of creditors the Debtor claimed lack of knowledge of his wife's (of twenty years) business affairs and accounts. The Complaint recites that the Debtor's Schedules and Statement of Financial Affairs did not disclose his wife's ownership interest in her jewelry business, her 4 carat diamond ring, her Mercedes vehicle, the Debtor's interests in prior businesses and asset transfers both business and personal. The Complaint recites other incongruities in the Debtor's disclosures. In addition, the Trustee alleged that the Debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, and that such act or failure to act was not justified under all of the circumstances of the case. In his answer to the complaint, the Debtor offers explanations with respect to the allegations as well as denials (especially as to filing false and misleading schedules). Numerous times the adversary matter was set for trial then continued at the request of one or both parties.

On June 14, 2001, Movants filed their Motion for approval of a settlement agreement. The terms of the compromise and settlement are that the Trustee will dismiss her complaint "with prejudice but the debts of John C. Drain, and of Michael Nathan, IIC Southwest Diamond Cutters and Misane Jewelry, will be excepted from discharge so that those claimants may pursue their rights under non-bankruptcy law, if any." In addition, the agreement provides that any creditor who objected to the settlement may have its debt excepted from the discharge by agreement or be allowed to pursue the existing objection on behalf of the estate.[2]

No creditor objected to the compromise within the allotted time and when the matter came before the Court, the only creditor whose claims would have been affected are those listed above. All other creditor claims would have been discharged.

The Motion states that, although the Trustee objected to the discharge of the Debtor, she had been unable to locate any assets of substantial value to distribute to creditors, did not believe that assets would be located in the future or that the Debtor would obtain assets and believes that the cost of proceeding further would increase the administrative burden on the estate, an increase that would not likely be recovered from assets of the estate. In addition, the Motion declares that the outcome of this adversary proceeding is uncertain. (At the hearing, the Trustee testified to her belief that she would be unable to successfully prosecute the Complaint.) The United States Trustee objected to the proposed settlement. The Motion was set for hear-

---

**2.** Apparently, any creditor who wished to continue the action on behalf of the estate would have been expected to substitute in as party plaintiff. Obviously, a highly suspect procedure in light of the procedural deadlines imposed by Federal Rule of Bankruptcy Procedure 4004. The Second Circuit Court of Appeals in *In re Chalasani,* 92 F.3d 1300 (2nd Cir.1996), recently declined to expand the deadlines of Rule 4004 and prohibited substitution of plaintiffs following a Rule 7041 notice of a proposed dismissal of discharge litigation. There, the court characterized such substitution as "procedural mechanisms," *id.* at 1311, and "legal fictions," *id.* at 1312, to evade the strict deadlines imposed by Rule 4004.

ing after which it was taken under advisement by the Court.

## DISCUSSION

 The Court has considered the pleadings, the evidence, the argument of counsel and the record in this case. This Court derives its authority to approve settlements from Rule 9019(a) of the Federal Rules of Bankruptcy Procedure. The Rule provides that, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr.P. 9019(a) [formerly 11 U.S.C. Rule 919(a)]. The decision of whether to approve a particular compromise lies within the discretion of the trial judge[...]. *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602–03 (5th Cir.1980); *see also Matter of Walsh Const.*, 669 F.2d 1325, 1328 (9th Cir.1982). The settlement should be "fair and equitable", as those terms are defined by jurisprudence, and in the best interests of the estate. *E.g. See SEC v. American Trailer Rentals Co.*, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965); *Protective Committee v. Anderson*, 390 U.S. at 441, 88 S.Ct. at 1171. *Also, Matter of Jackson Brewing Co., supra.*

The United States Trustee, as the only objecting party to this compromise, argues not the reasonableness of the compromise but the public policy considerations. The U.S. Trustee's argument is that any settlement or compromise of an action brought under 11 U.S.C. § 727 to deny a debtor a discharge is against public policy. The Trustee's position is that settlement of these matters is fraught with such potential danger for either over reaching on the part of a trustee or improper dealings on the part of a dishonest debtor that it simply should not be allowed. It is important to note that no one produced any evidence that any improprieties in the negotiation and confection of this compromise agreement existed. There is no evidence or allegation that this Trustee has acted improperly in any matter or is a party to any improper scheme in connection with this proposed compromise. The U.S. Trustee concedes that there is no controlling authority in the Fifth Circuit which would mandate that this Court rule compromises such as this are contrary to public policy. Within this Circuit the matter has not been addressed at the Circuit or District Court levels. This Court has therefore turned to other jurisprudence for guidance in resolving this issue.

 The Court in *Bankruptcy Receivables Mgmt. v. de Armond (In re de Armond)*, 240 B.R. 51 (Bkrtcy.C.D.Cal. 1999) identified three approaches taken by Courts considering the issue of whether to approve settlements of adversary proceedings asserting both § 727 and § 523 claims. Generally, the United States Trustee urges this Court to adopt the first position: that it is never appropriate for a court to approve a settlement of an objection to a debtor's discharge. *In re Armond, Ibid.* at 55 citing to *In re Moore,* 50 B.R. 661 (Bkrtcy.E.D.Tenn.1985). These cases, as does the United States Trustee, rely on a strict reading of § 727(a) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 7041 and the language of *Brown v. Felsen,* 442 U.S. 127, 128–29, 99 S.Ct. 2205, 2207–08, 60 L.Ed.2d 767 (1979) that if a debtor has engaged in wrongful conduct as defined under § 727 of the Bankruptcy Code, that debtor is not entitled to the benefits of the Bankruptcy Code and discharge is prohibited.[3] *In re*

---

**3.** This Court agrees with the Second Circuit Court that "[§] 727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more per-

*Moore,* 50 B.R. 661, 663 (Bankr.E.D.Tenn. 1985)["It is the duty of the bankruptcy court to grant or deny a discharge based on these conditions."].[4] The extreme result is that compromise of a discharge action has even been held to be illegal. *See In re Levy,* 127 F.2d 62 (3rd Cir.1942).

A second approach is seen in *In re Margolin,* 135 B.R. 671, 673 (Bkrtcy. D.Colo.1992). Seeking to "uphold the policies behind § 727, and the public interest in fostering the peaceful, just, speedy and inexpensive resolution of disputes", that court held settlement involving withdrawal of § 727 actions given partial payment was proper, provided there was notice and full disclosure. The *Margolin* Court also allowed objecting creditors to intervene or be substituted in the action.[5]

The third approach[6] holds that "any settlement of a § 727 claim is limited to those circumstances where the terms of the settlement are fair and equitable and in the best interests of the estate." *Armond, Supra* at 56, *citing to Tindall v. Mavrode (In re Mavrode),* 205 B.R. 716 (Bkrtcy.D.N.J.1997), *In re Taylor,* 190 B.R. 413 (Bkrtcy.D.Colo.1995) and *Jacobson v. Robert Speece Properties, Inc. (In re Speece),* 159 B.R. 314 (Bkrtcy.D.Colo. 1993).

The objection filed by the United States Trustee urged the Court to "disavow the authority holding that discharge actions may be settled." On the instant facts alone, this Court is unwilling to adopt blanket disavowal as the statement of law for this District. Yet, each case this Court has reviewed favoring settlements of § 727 actions was highly distinguishable on its facts from the case at bar.[7] Applied to the

vasive than a fraud on ... a single creditor." *In re Chalasani,* 92 F.3d 1300, 1310–1311 (2d Cir.1996) *citing to In re Harrison,* 71 B.R. 457, 459 (Bkrtcy.D.Minn.1987).

4. The burden of proof is by preponderance of the evidence and it is a "shifting" burden. Initially it rests with the objecting party. "Once an objecting creditor establishes a prima facie case that one of the grounds for nondischarge under § 727 exists, the burden shifts to the debtor to satisfactorily explain why discharge should be granted." Russell, Bankruptcy Evidence Manual, 1999 Ed., § 301.58.

5. The solution espoused by the *Margolin* Court aspires to a Solomanic wisdom. Unfortunately, the circumstances of the case were unique to that case. No creditors objected. The trustee objected to the settlement, but failed to file a complaint under § 523 or § 727. The trustee also failed to intervene in the objecting creditor's adversary proceeding. The Court doubted that the objecting creditor could ethically prosecute the § 727 action, given the resolution of the § 523 claims, and chose not to put the creditor in the position of prosecuting an action detrimental to its own client.

6. This approach is deemed by the *Armond* Court to be the "majority view"; this Court disagrees with such categorization.

7. For example, in the case of *Tindall v. Mavrode, Supra,* the debtor amended his schedules to correct oversights, the settlement was funded with non-estate assets and the Court found that the creditor body would not be harmed. In *In re Armond,* 240 B.R. 51 (Bkrtcy.C.D.Ca. 1999), the § 727 action was dismissed and the § 523 settlement was approved provided any recovery by creditors was turned over to the trustee for the benefit of all creditors. In *In re Bates,* 211 B.R. 338 (Bkrtcy.D.Minn.1997), payment of the settlement was made from exempt assets which would not have otherwise been available to creditors, the payments benefitted the entire estate, not merely the "squeaky wheel" creditors; the settlement involved no extension of the deadlines for objecting to dischargeability of particular debts under § 523. Other Courts indicated that under certain circumstances they, also, might approve settlement of a § 727 action, but they denied approval on the facts of the cases before them. *See, e.g., In re Nicolosi,* 86 B.R. 882 (Bkrtcy.W.D.La.1988); *In re Taylor,* 190 B.R. 413 (Bkrtcy.D.Colo.1995) [particulars of agreement not in the best interests of the estate]; *In re Corban,* 71 B.R. 327 (Bkrtcy.

instant facts, the cases approving compromise and settlement of discharge actions are "unpersuasive" (as the United States Trustee argues)—but it is not completely unforeseeable that circumstances could occur under which settlement of another action brought under § 727 might be found reasonable, in the best interests of a particular estate, and not disserving of public policy. E.g. *Tindall v. Mavrode*, 205 B.R. 716 (Bkrtcy.D.N.J.1997) ["..., the creditor body will not be harmed by settlement. To the contrary, the assets available to the creditors will be increased by the elimination of plaintiffs' claim through non-estate (Mr. Mavrode's son) funds. Further litigation may result in delay and possible depletion of the assets of the estate and a subsequent harm to the other creditors.... In particular, this court determines that this settlement should not be summarily denied as the entire creditor body will be benefitted by the settlement and not just the settling parties."]. *Mavrode, Ibid at* 720–21.

M.D.La.1987) [the alleged misconduct of the debtors had no effect whatsoever on creditors].

8. The earliest reference (reviewed by this Court) to "public policy" in § 727 discharge matters is found in *In re Hammerstein*, 189 F. 37, 37–38 (2nd Cir.1911):

A discharge is granted to an honest bankrupt in order that he may reinstate himself in the business world; it is refused to a dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future. In a sense the question has passed beyond the creditors and is one of public policy, but when the charge is that the bankrupt has defrauded his creditors the fact that they have ceased to assert their charge cannot be wholly ignored by the court.

*Ibid.* at 37–38.

9. Bankruptcy courts share the concern that there be no "taint of compromise" involved in the dismissal of a § 727 action. See, e.g.,

The Courts that have addressed the issue have given thoughtful consideration to whether settlement of a § 727 action must be disapproved as a matter of law. Public policy is not uni-dimensional; neither is it static.[8] The issue at bar raises competing policies: certainly, there should be no "taint of compromise"[9] involved in the dismissal of a § 727 action, yet the estate should be maximized to benefit its creditors. There is a "tension between vindication of the public interest in upholding the policies behind § 727, and the public interest in fostering the peaceful, just, speedy and inexpensive resolution of disputes...". *In re Margolin*, 135 B.R. 671, 673 (Bkrtcy.D.Colo.1992) *citing to In re Nicolosi,* supra; *In re Short,* 60 B.R. 951 (Bankr.M.D.La.1986); *In re Joseph,* 121 B.R. 679 (Bankr.N.D.N.Y.1990). The Court seeks to protect the debtor's fresh start[10] (especially when fraudulent conduct on the part of the debtor has not been judicially determined as in *Mavrode, In re Bates,* 211 B.R. 338, 348 (Bkrtcy.D.Minn.

*Hage v. Joseph (In re Joseph)*, 121 B.R. 679, 682 (Bankr.N.D.N.Y.1990). Because discharge is a statutory right undergirded by public policy considerations, it is not a proper subject for negotiation and the exchange of a quid pro quo. *In re Moore*, 50 B.R. 661, 664 (Bankr.E.D.Tenn.1985). And, the dismissal of a complaint seeking § 727 relief often harms an entire class of creditors. See *Joseph*, 121 B.R. at 682; see also *In re Margolin*, 135 B.R. 671, 673 (Bankr.D.Colo.1992); *ITT Fin. Servs. v. Corban (In re Corban)*, 71 B.R. 327, 329 (Bankr.M.D.La.1987). *In re Chalasani*, 92 F.3d 1300, 1310 (2nd Cir.1996).

10. Bankruptcy policy favors giving the debtor a "fresh start". *Grogan v. Garner*, 498 U.S. 279, 280, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991); *see, also H.R. Rep. 595, 95th Cong., 1st Sess. 384–85 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6340–41; S.Rep. No. 989 95th Cong., 2d Sess., 98–99 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5884–85.* See also, *Brown v. Felsen*, 442 U.S. 127, 128, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

1997) and as in this matter) [11], but also seeks to discourage the truly dishonest debtor, the overreaching trustee and any coercive creditor. The Court cannot achieve such ends by blanket disavowal; it cannot achieve such ends by routine approval of settlement agreements when no party objects. Rather, as the Court suggested in *Bates*, the policy should be to view § 727 settlements with heightened skepticism and to subject them to close scrutiny by the bankruptcy court. *In re Bates, Ibid at* 348. Until a Court of authority for this Court unequivocally renders a bright line rule on the issue, this Court finds the rationale of the Minnesota Bankruptcy Court sound: "a per se rule against settlement in all cases is inappropriate, as such a rule would wholly deny the benefits of compromise in cases where settlement is in the best interests of the estate." *In re Bates, Ibid.*

■ The settlement proposal before this Court cannot serve as the exemplar of a case in which it would be appropriate to rule in favor of compromise of a § 727 action. Unlike, the *Bates* settlement and *Mavrode* settlement, the settlement proposed by Movants accrues absolutely no benefit to the general creditors of this estate. Only one group of affiliated creditors, some of whom have not prosecuted their non-dischargeability claims whatsoev-

er and one of whom has already had an action dismissed will benefit. Further, the settlement as proposed completely violates the principle of *Taylor v. Freeland,* in that it reopens the deadline for objections to discharge and/or dischargeability for creditors objecting to the settlement. *Taylor v. Freeland,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Ibid,* 112 S.Ct. at 1648.[12] See also, *In re Chalasani, Supra,* in which the Court recently declined to expand the deadlines of Rule 4004 and prohibited substitution of plaintiffs. Accordingly, leaving open for the moment the issue of public policy, this Court simply cannot find the proposed settlement in the best interests of the estate. See, *Matter of Jackson Brewing Co.,* 624 F.2d 605, 607 (5th Cir.1980); *Matter of AWECO, Inc.,* 725 F.2d 293, 298 (5th Cir.) *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984).

The testimony offered at the hearing on the Motion made it abundantly clear to this Court that the Trustee does not believe her case has merit or likelihood of success. If so, she may move to withdraw her complaint.[13] For the foregoing reasons, the United States Trustee's Objection must be sustained and the Motion To Settle And Compromise filed by the Debt-

---

**11.** In *In re Speece,* 159 B.R. 314 (Bkrtcy. E.D.Cal.1993) and *In re Nicolosi,* 86 B.R. 882 (Bkrtcy.W.D.La.1988) the debtors sought settlement after judgment was entered denying the discharge.

**12.** See, also, *In re Peiman,* 255 B.R. 178, 180 (Bkrtcy.E.D.Tex.2000)["...the Court seeks to do substantial justice, not to make a game out of the statutorily prescribed deadlines and rules of procedure."]

**13.** *But, see:* Advisory Committee notes to Rule 7041:

"Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rule or order have required the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection. By specifically authorizing the court to impose conditions in the order of dismissal this rule permits the continuation of this salutary practice."

or and Trustee must be denied. An order will be entered accordingly.