**In re Frank TROVATO, Debtor.**

**Frank TROVATO, Plaintiff/Appellant,**

v.

**CHICAGO–MIDWEST CREDIT MAN-AGEMENT ASSOCIATION, Defendant/Appellee.**

**No. 89 C 850.**

United States District Court, N.D. Illinois, E.D.

Aug. 28, 1991.

Michael T. Reid, Thomas E. Roche, Halfpenny, Hahn & Roche, Chicago, Ill., for Chicago–Midwest Credit Service Corp.

John H. Redfield, Chicago, Ill., for Frank Trovato.

Peggy Wallace, Chicago, Ill., for Thomas E. Raleigh, Trustee in Bankruptcy.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This bankruptcy appeal is brought by the debtor Frank Trovato ("Trovato") from an order of the Bankruptcy Court which approved a settlement in the sum of $4,000.00 of a retaliatory discharge lawsuit which had been brought by Trovato against Chicago–Midwest Credit Management Association ("CMCMA"). Trovato contends that the Honorable Eugene R. Wedoff, United States Bankruptcy Judge, abused his discretion in approving the $4,000.00 settlement in a case purportedly worth $250,-000.00 because there allegedly was no evidence showing that CMCMA had a valid defense to the retaliatory discharge claim. Trovato filed the instant appeal on January 3, 1989. Briefing on the appeal subsequently was stayed pending a ruling by the Bankruptcy Court on the merits of an adversary complaint filed by CMCMA in the bankruptcy proceeding. In that complaint, CMCMA sought a determination that certain of its claims against the bankrupt estate were nondischargeable. After a trial, Judge Wedoff issued his decision on the adversary complaint on June 26, 1991, finding that CMCMA has a nondischargeable claim against Trovato in the amount of $2,166.20. In reaching that conclusion, the Bankruptcy Court made certain findings of fact which CMCMA contends are entitled to collateral estoppel effect on this appeal and which presumably would require affirmance of the decision of the Bankruptcy Court approving the proposed settlement. The Court concludes that it need not determine the proper application of the doctrine of collateral estoppel in order to conclude that the Bankruptcy Court did not abuse its discretion in approving the $4,000.00 settlement. Accordingly, the decision of the Bankruptcy Court will be affirmed.

### II. FACTS

The events relevant to this appeal began in January 1987 when Trovato filed a lawsuit in the Circuit Court of Cook County, Illinois against his former employer CMCMA. The gravamen of that state court complaint was that Trovato had been discharged from his employment with CMCMA for "whistleblowing" activities. According to the complaint, Trovato had uncovered a scheme pursuant to which his employer, a collection agency, would convert certain funds of its clients to fees rather than remitting or reporting the collections to its clients. When Trovato attempted to put a stop to this practice, he contends that CMCMA first threatened him with dismissal and then ultimately terminated his employment. CMCMA denied these allegations in the state court proceeding and responded that Trovato had been discharged because of various schemes to defraud his employer during the course of his employment.

Subsequent to the filing of the state court action, Trovato filed a voluntary petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 *et seq.* Thomas E. Raleigh was appointed Trustee to administer the debtor's estate. After the filing of the bankruptcy petition, CMCMA filed an adversary complaint in the bankruptcy proceeding, contending that certain of its claims against Trovato's estate were nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). In particular, CMCMA challenged the dischargeability of its claims for sums paid into the account of the Drugs No Thanks Club ("DNTC"), an enterprise controlled by Trovato. The claims of fraud raised by CMCMA in this adversary complaint were similar to the defenses it raised to the state court retaliatory discharge claim.

After the filing of CMCMA's adversary complaint in the bankruptcy proceeding, the Trustee caused the retaliatory dis-

charge action to be removed to the Bankruptcy Court, where it was consolidated with CMCMA's adversary complaint. Subsequently, the Trustee received an offer to settle the state court litigation for $4,000.00, to be paid to the Trustee by CMCMA and its subsidiary Chicago Midwest Credit Service Corporation ("CMCSC"). The Trustee concluded that acceptance of this settlement offer would be in the best interest of the bankruptcy estate, and accordingly, the Trustee presented to the Bankruptcy Court on November 4, 1988, an application to settle the controversy. Notice of the proposed settlement was provided to the debtor, creditors, and other parties in interest, and written objections to the proposed settlement were filed by Trovato and others. The Bankruptcy Court held a hearing on the Trustee's application on December 9, 1988, at which time Trovato and the Trustee testified. The Trustee stated that he had investigated the allegations made by Trovato in the state court lawsuit, that he had spoken to Trovato on a number of occasions about those allegations, and that he or his associate had reviewed the depositions taken in the case and that his associate had attended two such depositions. (Dec. 9, 1988 Transcript ("Tr.") at 9.) The Trustee's investigation revealed to him that "our chances of success are very limited because of the fact we have a difficult client, a difficult witness." (*Id.* at 5.) In deciding to accept a settlement, the Trustee testified that he had determined that "Trovato did not have clean hands in this matter and that he would not be a credible witness." (*Id.* at 4.) Moreover, the Trustee also testified that the estate did not have sufficient assets to fund a major lawsuit and that the minimal possibility of a return in the lawsuit did not justify further pursuit of the action. (*Id.* at 4–5.)

On the basis of the evidence adduced at this hearing, the Bankruptcy Court approved the proposed $4,000.00 settlement. The Bankruptcy Court explained that in order to prevail on his retaliatory discharge claim, Trovato would be required to establish, based upon the credibility of his own testimony, certain key facts in support of his claim. Having listened to Trovato's testimony at the hearing, the Bankruptcy Court believed that the Trustee had "a sufficient basis for doubting Mr. Travotta's [sic] credibility, so as to make his judgment that the matter ought to be settled for a fairly nominal sum a reasonable judgment." (*Id.* at 86.) For example, the Bankruptcy Court stated that Trovato's

> testimony regarding the Drugs, No Thanks Club, the receipt of monies into the Drugs, No Thanks Club, the disbursement of monies from that fund, the commingling of funds from his private ventures into that account, all raise serious questions of credibility. So that in listening to that I find myself believing that the Trustee does have justification in accepting this settlement.

(*Id.*) Finally, the Bankruptcy Court also was "moved by the fact that the estate, apart from this cause of action, has no resources, so that in order to proceed in this cause of action the Trustee would be obligated to advance legal expenses and I don't think that that is appropriate given the state of the testimony that would be provided" by Trovato. (*Id.* at 86–87.) For all of these reasons, the Bankruptcy Court approved the settlement on December 9, 1988. On December 23, 1988, the Bankruptcy Court denied Trovato's request for a rehearing.

On January 3, 1989, Trovato took this appeal from the Bankruptcy Court's orders of December 9 and December 23. Trovato argues that the Bankruptcy Court abused its discretion when it approved the $4,000.00 settlement of the retaliatory discharge claim. After Trovato filed his initial brief in support of his appeal on April 19, 1989, the Court stayed further briefing pending a ruling by the Bankruptcy Court on CMCMA's adversary complaint. After a trial before the Bankruptcy Court, Judge Wedoff issued his decision on the adversary complaint in a Memorandum of Opinion dated June 26, 1991. Judge Wedoff concluded that CMCMA had a nondischargeable claim against Trovato for only a portion of the debt alleged in its adversary complaint. *See In re Trovato*, Bankr. No.

87 B 09641, slip op. (Bankr.N.D.Ill. June 26, 1991).[1] In making that determination, however, the Bankruptcy Court made extensive findings detailing Trovato's schemes to manipulate the collection procedures of CMCMA in order to divert funds to his own use. *Id.* at 3. In particular, the Bankruptcy Court meticulously outlined four different ways in which Trovato had improperly diverted funds: (1) Trovato employed "a kickback scheme involving the lawyers he retained on behalf of members of [CMCMA]" (*id.*); (2) Trovato received "kickbacks from the collection of foreign accounts, which Trovato referred to International Exchange Techniques (Intertex)" (*id.* at 4); (3) "Trovato obtained funds by forging endorsements of payees on debtor checks and directing payment of these checks to DNTC" (*id.*); and (4) "Trovato collected a number of accounts using DNTC as the collection service so that DNTC, rather than Chicago Midwest, received the commissions." *Id.* In addition, the Bankruptcy Court further concluded that "Trovato was fired by Chicago Midwest after his misconduct was discovered, and he filed his bankruptcy petition shortly thereafter." *Id.* at 5. CMCMA contends that these findings are entitled to collateral estoppel effect on this appeal and that the Bankruptcy Court's findings undermine the viability of Trovato's retaliatory discharge claim. In light of those findings, the Trustee and CMCMA submit that the Bankruptcy Court's approval of the $4,000.00 settlement was not an abuse of its discretion.

## III. ANALYSIS

On this appeal, Trovato contends that the Bankruptcy Court abused its discretion in accepting the $4,000.00 settlement because the Trustee failed to present any evidence at the December 9, 1988 hearing establishing that CMCMA had a valid defense to the retaliatory discharge claim. Moreover, although CMCMA now purports to have discharged Trovato for the diversion of funds outlined above, Trovato contends that his employer did not learn of his fraudulent conduct until long after his employment was terminated. Thus, according to Trovato, that conduct could not have caused the termination of his employment. After carefully reviewing the transcript of the December 9, 1988 proceedings before Judge Wedoff in relation to each of the arguments advanced by Trovato, the Court concludes that the Bankruptcy Court did not abuse its discretion in approving the proposed settlement.

 In reviewing a proposed settlement in a liquidation proceeding, the Bankruptcy Court may approve the settlement if it concludes that the proposed settlement would be in the best interest of the debtor's estate. *See In re Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir.1989); *In re American Reserve Corp.*, 841 F.2d 159, 161 (7th Cir.1987); *In re Del Grosso*, 106 B.R. 165, 167 (Bankr.N.D.Ill.1989); *In re Patel*, 43 B.R. 500, 505 (N.D.Ill.1984). Central to that analysis "is a comparison of the settlement's terms with the litigation's probable costs and probable benefits." *American Reserve*, 841 F.2d at 161; *see also Energy Cooperative, Inc.*, 886 F.2d at 927. In weighing probable costs and benefits, the Seventh Circuit has instructed bankruptcy courts to consider "the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay." *Id.* Moreover, the Bankruptcy Court also should consider objections to the proposed settlement, although the views expressed by objecting parties are by no means controlling. *Id.; see also In Re Egolf*, 102 B.R. 706, 709 (Bankr.N.D.Ill.1989). Because the Bankruptcy Court is best able to consider the equities and the reasonableness of a particular settlement, this Court, sitting in review of the Bankruptcy Court's decision, will not reverse the decision of the Bankruptcy Court absent an abuse of that Court's discretion. *See Energy Coopera-*

---

1. The nondischargeable portion of CMCMA's claim amounted to only $2,166.20. The Bankruptcy Court found that the remaining claims were dischargeable, despite the fact that CMCMA had established the fraudulent conduct by Trovato alleged in its adversary complaint. According to the Bankruptcy Court, these dischargeable claims belonged to CMCMA's clients, whose funds actually had been diverted by Trovato, rather than to CMCMA itself. *Id.* at 6–10.

*tive, Inc.*, 886 F.2d at 926; *In re Patel*, 43 B.R. at 505. Despite this deferential standard of review, it is clear that the Bankruptcy Court must have adequately exercised its discretion. The Bankruptcy Court "may not simply accept the trustee's word that the settlement is reasonable, nor may [it] merely 'rubber-stamp' the trustee's proposal;" instead, "[t]he bankruptcy judge must apprise himself of all facts necessary to evaluate the settlement and make an 'informed and independent judgment' about the settlement." *American Reserve Corp.*, 841 F.2d at 162; *see also Energy Cooperative, Inc.*, 886 F.2d at 924–25.[2]

■ The Court finds that the Bankruptcy Court appropriately exercised its discretion in this case. When the application for the approval of a settlement of the state court litigation was made by the Trustee, the Bankruptcy Court held an evidentiary hearing at which both the Trustee and Trovato were afforded the opportunity to testify. The Bankruptcy Court heard the Trustee articulate his reasons for accepting the proposed settlement, and Trovato had the opportunity to cross-examine the Trust-

ee. Moreover, the Bankruptcy Court also was able to hear the testimony and to observe the demeanor of Trovato. On the basis of Trovato's testimony, the Bankruptcy Court found sufficient reason for the Trustee to doubt Trovato's credibility. (*See* Tr. at 86; *see also* Tr. at 4.) Moreover, the Bankruptcy Court briefly but sufficiently articulated his own independent reasons for questioning the veracity of Trovato's testimony. (*Id.* at 86.)[3] Because any success in the retaliatory discharge lawsuit would depend largely on Trovato's ability, through his own testimony, to establish facts in support of his claim, the questions raised about his credibility and character suggested to the Bankruptcy Court that the nominal settlement offered by CMCMA was reasonable. (*Id.*) Moreover, because of his own doubts about Trovato's credibility, the Bankruptcy Court agreed that the Trustee should not be required to advance legal expenses to the debtor's estate, which lacked its own resources to proceed with the retaliatory discharge claim. (*Id.* at 86–87.) Accordingly, the Bankruptcy Court approved the

---

**2.** In doing so, the Seventh Circuit has stated that the Bankruptcy Court

> need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and set out the reasons for his decision. The judge may make either written or oral findings; form is not important, so long as the findings show the reviewing court that the judge properly exercised his discretion.

*American Reserve Corp.*, 841 F.2d at 163.

**3.** The Bankruptcy Court's doubts about Trovato's veracity were borne out during the course of the trial on CMCMA's adversary complaint. In its Memorandum of Opinion of June 26, 1991, the Bankruptcy Court wrote:

> Trovato testified that DNTC was a charitable, nonprofit organization to which members of the Association and the attorneys representing them made voluntary contributions. This testimony was entirely unbelievable: the supposed contributors testified that they had no intention of making charitable contributions when they made deposits to DNTC at Travato's [sic] request; there was no documentation of any charitable activity by DNTC; and there was substantial evidence that DNTC

> funds were used for personal expenses of Trovato. Considering these factors, as well as Trovato's demeanor as a witness, the court was left with a firm conviction that Trovato gave deliberately false testimony.

*Trovato*, Bankr. No. 87 B 09641, slip op. at 3 n. 1. Moreover, although this Court has never had the opportunity to see Trovato on the witness stand, it too has serious doubts about Trovato's character and his capacity to tell the truth. Those doubts stem from a reading of the transcripts of the proceedings before the Bankruptcy Court and from statements made in Trovato's reply brief on this appeal. In that brief, Trovato accuses the Bankruptcy Court of attempting to resolve the instant appeal through its opinion on CMCMA's adversary complaint. Trovato boldly states that he believes that "[t]he decision by Judge Wedoff is an attempt by him to resolve this appeal." (Trovato Reply Br. at 6; *see also* Trovato Reply Br. at 4 ("We are of the opinion that the memorandum opinion of Judge Wedoff was written with the specific intent to bolster this appeal.").) These are serious charges leveled against a bankruptcy judge who, in large part, ruled in Trovato's favor on CMCMA's adversary complaint. The charges are wholly without support in the record, however. Instead, they seem to evidence Trovato's propensity to blindly lash out against anyone who may disagree with him.

$4,000.00 settlement as a reasonable exercise of the Trustee's discretion. (*Id.* at 87.)

The Bankruptcy Court's subsequent findings in its June 16, 1991 opinion on the adversary complaint, which confirm the suspicions the Court had expressed at the December 8, 1988 hearing, are startling only in terms of the scope of the fraud perpetrated by Trovato on CMCMA and its clients. Trovato contends that those findings do not affect the instant appeal, however, because CMCMA purportedly did not learn of Trovato's fraud until long after his employment had been terminated.[4] CMCMA responds that although it may have been unaware of the scope of Trovato's fraud at the time it discharged him, it did know that Trovato was diverting funds. Moreover, CMCMA contends that Trovato was discharged for precisely that reason. The Bankruptcy Court sided with CMCMA, finding in the adversary proceeding that "Trovato was fired by [CMCMA] after his misconduct was discovered." *Trovato,* Bankr. No. 87 B 90641, slip op. at 5. The Court finds it unnecessary to enter this fray in order to resolve the instant appeal. Even if the June 26, 1991 findings of the Bankruptcy Court have no collateral estoppel effect here, the Court concludes that the record before the Bankruptcy Court on December 9, 1988 alone was sufficient to show that the proposed settlement was in the best interest of the debtor's estate. The Bankruptcy Court considered the appropriate factors in analyzing the reasonableness of the proposed settlement. Its findings indicated that the Bankruptcy Court had apprised itself of the facts neces-

sary to evaluate the proposed settlement and that it had made an "informed and independent judgment" relating to the reasonableness of that settlement. *See American Reserve,* 841 F.2d at 162–63. Accordingly, this Court finds that the Bankruptcy Court properly exercised its discretion in approving the $4,000.00 settlement, and its decision therefore is affirmed on this appeal.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is affirmed.

---

4. Pursuant to this theory, Trovato contends that the Trustee presented no evidence at the December 9, 1988 hearing showing that CMCMA had any defense to the retaliatory discharge complaint. He further argues that any adverse evidence relating to the referral fee scheme addressed by the Bankruptcy Court in its June 16, 1991 opinion would be subject to an exclusionary motion in limine because it purportedly has no nexus to the termination of Trovato's employment. (*See* Trovato Reply Br. at 3.) The Court cannot agree. First, the Trustee did present evidence of Trovato's purportedly unclean hands to the Bankruptcy Court on December 9, 1988. (*See* Tr. at 4–6.) It is CMCMA's position that Trovato was fired as a result of this improper and possibly fraudulent conduct.

Accordingly, the validity of CMCMA's stated reason for dismissing Trovato would be the central issue in the retaliatory discharge lawsuit. It is difficult to imagine, therefore, how the "unclean hands" evidence would be excluded in limine prior to any trial of the retaliatory discharge action. That is CMCMA's defense, and it seemingly would be entitled to present such evidence at trial. The more probable scenario is that the Bankruptcy Court's findings with respect to Trovato's various fraudulent schemes would be accorded collateral estoppel effect in the state court lawsuit, and additional evidence then would be taken as to when CMCMA learned of these schemes and whether such conduct ultimately was the basis for Trovato's discharge.