**In the Matter of Russell Lee EGOLF and Patricia H. Egolf, Debtors.**

**Bankruptcy No. 86–30310.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

May 31, 1989.

\* \* \* \* \* \*

F. John Rogers, Fort Wayne, Ind., for debtors.

Daniel E. Serban, Fort Wayne, Ind., for Indiana Lawrence Bank.

Stephen H. Downs, Wabash, Ind., for First Nat. Bank of Wabash.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on an objection to a proposed settlement agreement between the debtors and First National Bank in Wabash. The settlement has been objected to by another creditor of the bankruptcy estate, Indiana Lawrence Bank. A hearing to consider both the proposed settlement and the objection was held on May 19, 1989. The court received evidence concerning the issues before it as well as the arguments of counsel. Debtors appeared through their counsel, Mr. John Rogers. First National Bank in Wabash was present through its attorney, Mr. Stephen Downs and the objector, Indiana Law-

rence Bank was present by its counsel, Mr. Daniel Serban.

Having considered the evidence and arguments of counsel this decision constitutes the court's findings of fact and conclusions of law.

First National is a substantial creditor of the debtors, by virtue of a state court judgment against them, for more than $32,-000.00, obtained shortly before bankruptcy. The total amount currently due on account of this judgment is placed at approximately $55,000.00. The judgment was obtained in the Huntington Circuit Court and has been docketed in Wabash County, Indiana, where the debtors own real estate, thus, giving First National a lien upon that property. The evidence presented at the hearing does not, however, indicate to what extent these liens may have any value, thereby giving First National a secured claim as contemplated by § 506(b). It does seem, however, that the bank is undersecured.

First National has also been a very active creditor during the course of this Chapter 11. It began as an involuntary proceeding in which First National was one of the petitioning creditors. It has successfully prosecuted a complaint objecting to discharge and, by a prior order, has been authorized by the court to prosecute an action which seeks to recover allegedly fraudulent conveyances, for the benefit of the bankruptcy estate.

The objecting creditor, Indiana Lawrence, is also a substantial creditor of the debtors. Its claim on the date of the petition was in the approximate sum of $311,-000.00. The claim was secured by liens upon property with an approximate value of $200,000.00. Pursuant to certain adequate protection agreements, some of the property securing payment has been returned to the creditor, in partial satisfaction of the claim. Mr. Egolf's testimony indicates that the estate currently retains approximately $90,000.00 in assets which are subject to objector's liens.

As with all settlements, the proposal which has been put before the court is an attempt to buy peace between the debtors and First National. Under the terms of the deal, First National is to receive the sum of $35,000.00, in full satisfaction of both its secured and unsecured claims. In return, First National would cease to be a creditor. Accordingly, part of the agreement contemplates that it would not object to debtors' attempt to dismiss this proceeding, although the actual dismissal is not part of the settlement. Furthermore, First National has agreed to dismiss the fraudulent conveyance action, which it has been authorized to prosecute on behalf of the bankruptcy estate. Apparently, such a dismissal is supposed to be without prejudice, as counsel has indicated the action could be re-filed should another entity desire to prosecute it.

One of the most intriguing aspects of the settlement is that the money needed to fund it does not represent property of the estate. Instead it is being advanced by third parties—Janet Behny and R.J. Murphy Company, a corporation of which Miss Behny is the sole shareholder, officer, and director. Miss Behny and Mr. Egolf maintain a very close personal relationship. Because of this relationship, Miss Behny wants to help Mr. Egolf and has provided the money needed to fund the settlement. Of the required $35,000.00, $30,000.00 has been obtained by R.J. Murphy Company through loans from the Bippus State Bank. The remaining $5,000.00 consists of Miss Behny's personal funds, which she obtained by cashing in her interest in a pension plan.

Miss Behny's advance of funds appears to be a deal with no strings attached. There is no promissory note, no security agreement, and no understanding concerning repayment. Miss Behny acknowledges that she has made no request or demand for any type of repayment and has no intention to make such a request. Indeed it would seem that, although no gift tax return has been filed, the funds represent a gift to Mr. Egolf with no expectation of repayment, regardless of the future course of their relationship. Mr. Egolf's testimony supports this characterization of the arrangement. He acknowledges that there is no understanding of any kind concerning

an obligation to repay. He does admit, however, that he hopes to repay this money at some time out of his future income. Exactly when or how this would be accomplished, however, remains a mystery.

Indiana Lawrence objects to the settlement arguing that it unnecessarily favors only one creditor and requires the remaining creditors of the estate to rely on debtors' successful performance of a Chapter 11 plan, which has yet to be confirmed, to receive payment of the amounts due them. Consequently, counsel for the objector believes that the settlement represents unduly favorable treatment of one particular creditor.

 Whether or not the proposed settlement is approved is a matter committed to the discretion of the bankruptcy court. As observed by the Seventh Circuit, this requires the court to actually exercise its discretion. We are not permitted to just accept the parties' representation that the settlement is fair and reasonable. Instead, the court must familiarize itself with all of the attendant facts and circumstances, in order to "make an 'informed and independent judgment' about the settlement." *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir.1987) (citation omitted).

This requires the court to make some sort of comparison between the nature of the proceeding after settlement and without it, should the dispute which the settlement is designed to resolve be fully litigated. Consequently, we must consider not only the terms of the settlement itself but also the potential costs and benefits of not settling. Among the factors which enter into this equation are the nature and complexity of the dispute and its probable outcome, together with the expense, inconvenience and delays necessarily attendant to litigation. *Id.* at 161. Objections to the settlement must, of course, also be considered, although the views of objecting creditors are not controlling. *Id.* at 161–62. All of these vagaries or imponderables must be evaluated within the context of the court's central inquiry in reviewing a proposed settlement. This inquiry involves "determining whether a proposed settlement is in an estate's best interests...." *Id.* at 162.

It is difficult to determine with any degree of precision what this settlement may mean in the context of improving the efficiency of administration, by resolving current disputes and avoiding future ones. The essence of the proposed settlement is to pay First National $35,000.00 so that it will go away. This inevitably means that this bank's current disputes with the debtors will be eliminated. It also presents the very real likelihood that disputes which have not yet arisen, concerning confirmation or performance of a Chapter 11 plan, will be avoided.

Some existing disputes may or may not go away. Where the possibility of dismissal is concerned, the agreement does not require debtors to dismiss this case or for the court to permit such a dismissal. The Bank has only agreed not to oppose it. There is no guarantee that another creditor, such as the objector, might not take First National's place in the vigorous participation in this proceeding. Furthermore, while the settlement contemplates that First National will seek to dismiss the pending adversary proceeding, dismissal is not required nor is the court bound to permit it. Consequently, it is theoretically possible that the court could require the continued prosecution of the action. Alternatively, another creditor might seek to be substituted for the current Plaintiff in the pending action or would ask the court's authority to maintain an independent action seeking the same result. Viewed in this way, the settlement eliminates few disputes which could potentially arise.

The funds necessary to perform the settlement do not represent assets of the bankruptcy estate. They are, instead, the proceeds of Miss Behny's generosity and her willingness to help Mr. Egolf extricate himself from a difficult situation, involving a creditor which is vigorously pursuing its rights. Since the settlement funds do not represent property of the estate, the estate's assets will not be diminished because of it. Because they are a gift, for which there is no expectation or obligation for

repayment, theoretically the estate's future cash flow will not be diminished and will continue to be available for the benefit of creditors.

We must recognize, however, that, in spite of the absence of a legal obligation to repay, Mr. Egolf has an understandable desire to do so. In the future, following confirmation of any proposed plan, we can never be assured that Mr. Egolf's desire to repay Miss Behny's generosity will not take precedence over his legal obligation to creditors, as they may be set forth in any proposed plan. Consequently, we can never have any assurance that Mr. Egolf will not scrupulously avoid any payment or transfer to Miss Behny, for on or account of this gift, to the detriment of the creditors' rights as they may be formulated under the plan.

One of the reasons First National has made its presence in this case sufficiently irritable to motivate Mr. Egolf and Miss Behny to settle upon the terms proposed is the authority given it under the court's prior order. First National previously sought and obtained this court's approval to prosecute certain actions, which belonged to the debtors-in-possession or the bankruptcy estate, for the benefit of the estate and the general creditor body. It was permitted to do so because it did not appear to the court that the debtors were sufficiently willing or able to properly prosecute such claims. In the absence of the court's approval, First National would have no standing to raise the issues it has.

■ When First National was authorized to prosecute the estate's claims against third parties it assumed a fiduciary role with regard to that litigation. Its obligation was to prosecute the litigation for the benefit of the bankruptcy estate and creditors in general. Consequently, it occupies a unique position before the court. It has become more than just an ordinary creditor. Where the pending litigation is concerned, it has assumed obligations which are similar to the duties of a trustee. In part, it is because of this unique position that its actions have become more "irritable" than those of other parties in interest.

Having undertaken an obligation to the general creditor body, First National should not be permitted to use that position to its own advantage. To do so would be improper. We do not mean to suggest that First National or its counsel has actually or consciously engaged in any impropriety or attempt to take advantage of its unique position. Nonetheless, the appearance of impropriety does exist.

Another problem that we have with the proposed settlement is the difficulty, if not the impossibility, of properly evaluating its merits. The proposal is not designed to resolve a discrete and identifiable dispute between First National and the debtors, such as would be associated with the resolution of a disputed claim or a particular cause of action. It is, instead, more in the nature of a general armistice, under which the debtors are buying eternal peace with First National. By fully satisfying its claims at the present time, future disputes concerning such things as the adequacy of any disclosure statement, the confirmability of any proposed plan and debtors' performance under it, will be avoided. The settlement also attempts to eliminate issues which are broader than any questions concerning the amounts due First National and the way its claims will be satisfied involving rights of the general creditor body, through the potential dismissal of the pending fraudulent conveyance action.

■ While private parties may settle their controversies on any terms which may be mutually satisfactory, this is not the case in bankruptcy proceedings. *In re Chicago Rapid Transit*, 196 F.2d 484, 490 (7th Cir.1952). There must, instead, be an assessment of the relative merits of the conflicting claims. The information presented to the court, in connection with the proposed settlement, must be sufficient to enable it to make an independent inquiry into these considerations. *Id.* at 491. Consequently, the terms of any settlement require "some more reasonable basis than expediency and the desire to terminate complex and troublesome litigation...." *Id.* at 490.

Based upon the evidence presented to the court, it does not appear that the settlement between debtors and First National Bank has any basis other than expediency and the desire to terminate troublesome litigation. Nothing which has been put before the court would indicate the amount of the settlement is based upon any type of assessment of the relative merits of the parties' conflicting claims. Although we know the total amount of First National's claim, we do not know the validity of its liens or what part of the amounts due may be secured and which are unsecured. Rather than being founded upon a dispassionate and analytical evaluation of conflicting claims, risks and rewards, it appears that the current settlement involved nothing more than generating whatever amount of money would be required to persuade First National to abandon further interest or participation in the proceeding.

■ A further consideration which must enter into the court's evaluation of any proposed settlement is the relative priority of the contested claim with the priorities of the other claims against the bankruptcy estate. *In re American Reserve Corp.,* *supra,* 841 F.2d at 162. Consequently, the fairness of the proposed settlement, as between the debtor and the settling creditor, cannot be the court's only consideration. Instead, we must also consider the fairness of the deal in relationship to the rights and interests of other creditors who are not able to participate in the settlement. *See Matter of Aweco, Inc.,* 725 F.2d 293, 298 (5th Cir.1984); *In re Rajneesh Neo–Sann-yas Intern. Commune,* 59 B.R. 49, 54 (Bankr.D. Oregon 1986). Thus, "[w]hen a settlement involves something other than a cash or promised payment to the estate ...the Court must determine whether similarly situated creditors will be equally treated." *In re Rajneesh, supra,* 59 B.R. at 52. Furthermore, the court "abuses its discretion in approving a settlement with a junior creditor unless the court concludes that priority of payment will be respected as to objecting senior creditors." *Matter of Aweco, Inc., supra,* 725 F.2d at 298.

The evidence presented to the court is not sufficient to permit it to conclude that priority of payment as to senior claimants will be respected. In other words, although First National will receive full payment of its secured claim under the terms of the settlement, we have not been given sufficient information to enable us to determine that any senior mortgage holders will be assured of receiving full payment of the amounts due them as well. Beyond this, some portion, albeit an unspecified amount, of the settlement payment is being made on account of First National's unsecured claim. This claim has an equal priority with the objector's unsecured claim and all other unsecured claims against the estate. If the court is to approve the settlement, which is approximately equal to the full amount due First National on the date of the petition, its unsecured claim will be satisfied at the present time. Other unsecured creditors, however, will not be treated similarly. Instead of receiving payment of their claims at the present time, they will be required to rely upon the successful performance of a yet to be confirmed plan. Accordingly, payment to them, in any amount, is not assured.

We recognize that often a proposed plan gives creditors an opportunity to receive a sum of money, upon confirmation, in full satisfaction of their unsecured claims, rather than relying upon payment over time to return a greater sum. Nonetheless, the option to participate in such an alternative treatment rests with the creditor. The creditor is given the opportunity to make a decision to reduce its claim to a certain amount and, by doing so, receive payment in full upon confirmation or to retain the full amount of its claim and hope for a larger return over time.

Where First National's unsecured claim is concerned, the settlement has many of these same attributes. Rather than electing to receive full payment of all amounts due it over time, First National has chosen to accept a specific sum now, based upon the theory that "a bird in the hand is worth two in the bush." Other unsecured creditors are not, however, being given the opportunity to participate on equal terms.

Debtors are not extending to them the opportunity to reduce their claims, to an amount approximately equal to the amounts due on the date of petition, and receive full payment now. Instead, they will be required to wait upon confirmation of a proposed plan and its successful performance. Consequently, the proposed settlement does not assure equal treatment of similarly situated creditors.

A final criticism of the proposed settlement is that it contravenes fundamental bankruptcy theory or policy. As the Fourth Circuit observed:

> The Bankruptcy Code does not permit a distribution to unsecured creditors in a Chapter 11 proceeding except under and pursuant to a plan of reorganization that has been properly presented and approved.... The clear language of these statutes [11 U.S.C. § 1121–1129], as well as the Bankruptcy Rules applicable thereto, does not authorize the payment in part or in full, or the advance of monies to or for the benefit of unsecured claimants prior to the approval of the plan of reorganization. *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987).

The proposed settlement fails to respect this fundamental policy against "piecemeal, pre-confirmation payments to certain unsecured creditors." *Id.*

For all of the foregoing reasons, the court cannot approve the proposed settlement between debtors and First National Bank.

An appropriate order will be entered.