**In re PLANNED PROTECTIVE SERVICES, INC., Debtor.**

**Bankruptcy No. LA89–12785RR.**

United States Bankruptcy Court, C.D. California.

July 11, 1991.

## MEMORANDUM OF DECISION

ROBIN L. RIBLET, Bankruptcy Judge.

Planned Protective Services, Inc. ("PPS"), acting under its confirmed Chapter 11 plan of reorganization, seeks the Court's approval for the compromise of a claim held by Julius and Gladys Levinson concerning their entitlement, as secured creditors, to proceeds from the sale of certain real property of debtor's estate. The Court has jurisdiction over the proposed compromise pursuant to 28 U.S.C. § 157(b)(1).

The facts underlying the Levinsons' claim are not in dispute. On June 8, 1989, the Levinsons loaned $35,000 to PPS and received as security therefor a deed of trust on PPS's real property located at 548 South Kingsley Drive in Los Angeles. PPS filed a Chapter 11 petition on June 12, 1989. The Levinsons recorded their deed of trust on June 16, 1989. The court subsequently approved the sale of the property during the pendency of PPS's Chapter 11 case, and creditors holding liens on the property were paid from the proceeds.

The Levinsons were not paid out of the sale proceeds, however, based on a dispute

with the debtor concerning the validity of their lien under applicable law. During claims litigation between the parties PPS asserted that the Levinsons' lien was invalid because the deed of trust was recorded post-petition. The Levinsons, on the other hand, contended they held a validly perfected security interest in the property pursuant to § 547(e)(2)(A) and § 362(b)(3) of the Bankruptcy Code.[1] The agreement reached between the parties proposes to resolve the Levinsons' alleged secured claim. It provides that the Levinsons will be paid from the balance of the sale proceeds as a secured creditor only the principal amount of $35,000, and that the Levinsons may assert an unsecured claim for any accrued interest to which they may be entitled. The reason for such a compromise, according to PPS, was to avoid the uncertainty and expense of litigation.

At the hearing before the court on the proposed compromise, the Court questioned whether the agreement was in the best interests of creditors on the theory that the Levinsons' lien, as a matter of law, was voidable by the debtor. There were no objections raised by creditors, as no creditor had appeared or filed written opposition to the proposed compromise. In response to the Court's queries, PPS further briefed the issue of the applicability of § 547(e)(2)(A) with respect to the post-petition recording of the Levinson deed of trust, and concluded that the Levinsons held a valid lien. Despite the apparent lack of objection by creditors, the Court has undertaken its own assessment of the wisdom of the compromise to determine whether the compromise may be approved.

## DISCUSSION

◼ Approval of a compromise under Bankruptcy Rule 9019 requires more than just a "rubber-stamping" of an agreement which has been arrived at by good faith negotiations. The Court must instead determine whether the compromise is fair and equitable. *In re A & C Properties*, 784

F.2d 1377, 1381 (9th Cir.1986), *cert denied sub nom Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). Such a determination requires the court to conduct a full and independent assessment of the compromise. *Id.* at p. 1383. Four factors must be considered in the court's inquiry:

1) the probability of success in the litigation;

2) the difficulties, if any, to be encountered in the matter of collection;

3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;

4) the paramount interest of the creditors and a proper deference to their reasonable views.

*In re Woodson*, 839 F.2d 610, 620 (9th Cir.1988); *In re A & C Properties*, 784 F.2d at 1381. Just as creditors' views would not be binding on this court, *In re General Store of Beverly Hills*, 11 B.R. 539, 541 (Bankr. 9th Cir.1981), the lack of objection from creditors in this instance does not end inquiry into whether the proposed compromise benefits this estate. *See Matter of W.T. Grant Co.*, 4 B.R. 53, 69 (Bankr.S.D.N.Y.1980) (position of creditors is factor to be weighed among others). The reorganized debtor, as the proponent of the compromise, has the burden of persuading the court that the proposed compromise meets the fair and equitable test. *In re Hallet*, 33 B.R. 564, 565–66 (Bankr. D.Me.1983).

◼ Consideration of the law governing the underlying lien dispute between the parties leads the court to conclude that PPS has failed to meet its burden. Under the *A & C Properties* and *Woodson* analyses, whether PPS would have succeeded in its litigation depends on the avoidability of the Levinsons' lien. Although PPS did not specifically state on which theory it originally believed the lien to be avoidable, presumably it was relying on the "strong arm clause" of § 544(a)(3).[2]

1. All statutory references are to the Bankruptcy Code unless otherwise stated.

2. Section 544(a)(3) provides: "(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the

■ Under § 544(a)(3), a trustee may avoid all obligations and transfers that would have been avoidable by a bona fide purchaser of real property at the commencement of the case. *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir.1988); *In re La Palomento*, 29 B.R. 291, 293 (Bankr. D.N.J.1983). A debtor-in-possession has the same rights and powers as a bankruptcy trustee. 11 U.S.C. § 1107(a).[3]

■ To determine the rights of a bona fide purchaser, the court looks to state law. *In re Gurs*, 27 B.R. 163, 165 (Bankr. 9th Cir.1983); *In re La Palomento*, 29 B.R. at 293. Under California law a bona fide purchaser for value prevails over a prior unrecorded lien on the property. Cal.Civ.Code § 1214. Accordingly, the debtor-in-possession, by virtue of § 544(a)(3) has the rights of such a hypothetical bona fide purchaser and may prevail over unrecorded transfers. *In re Chenich*, 100 B.R. 512 (Bankr. 9th Cir.1987).

There are several reported cases in which a trustee has avoided an unrecorded deed of trust based on the trustee's superior lien interest under § 544(a)(3), despite a creditor's efforts to record its deed of trust shortly after the filing of the debtor's petition. *See, e.g., In re Brown*, 37 B.R. 516 (Bankr.E.D.Mo.1984) (deed of trust recorded minutes after petition filed); *Gilbert v. Dixon*, 18 B.R. 579 (Bankr.S.D.Ohio 1982) (deed of trust recorded one month after petition); *In re Graham*, 110 B.R. 408 (S.D.Ind.1990). In each instance, however, the trustee prevailed without discussion by the court of the impact, if any, of the ten-

day grace period for perfection provided for in § 547(e)(2)(A).[4]

■ In the present case, the Levinsons recorded their deed of trust post-petition but within ten days of the loan transaction, which included the granting of the deed of trust as security for the loan's repayment. Section 547(e)(2)(A) provides that a transfer of a security interest occurs when the security interest attaches if it is perfected within ten days thereafter. Section 547(e)(2)(C)(ii) provides that the ten-day grace period continues to run after the petition date. 4 *Collier on Bankruptcy*, §§ 547.20, 547–88 (15th Ed.1979). Consequently, for purposes of a preference analysis, the transfer of the property interest here took place simultaneously with the execution of the deed of trust pre-petition, and therefore there was no preferential transfer within the meaning of § 547.

The question becomes whether the Levinsons' recordation within the ten-day grace period of § 547(e)(2)(A) insulates a transfer otherwise voidable under § 544(a). PPS has not been able to direct the Court to any authority which permits the ten-day grace period of the preference statute to override, or cross over in application to the trustee's avoiding powers under § 544(a).

■ On the other hand, there is ample authority demonstrating that § 544(a) operates independent of the preference rules, including the ten-day grace period of § 547(e)(2). For example, Section 546(b) provides for an exception to the trustee's avoiding powers under §§ 544, 545 and 549 concerning delays in perfection. Section 546(b) allows perfection to relate back ac-

trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— ... (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

3. In this instance the reorganized debtor reserved rights accorded the debtor-in-possession regarding the claims resolution process by the terms of its Plan of Reorganization.

4. Section 547(e)(2) provides as follows: "(e)(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time; (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—(i) the commencement of the case; or (ii) 10 days after such transfer takes effect between the transferor and the transferee."

cording to "generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." The phrase "generally applicable law" relates to state law. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872, 6327. In California, perfection of a deed of trust occurs when the document is recorded in the office of the County Recorder. Cal.Civ. Code § 1213; *In re Schuman*, 81 B.R. 583, 587 (Bankr. 9th Cir.1987). Prior to recordation, an interest in real property is not effective against intervening creditors. *See* Cal.Civ.Code § 1214. Accordingly, the Levinsons could not avail themselves of the limited exception of § 546(b).

Under the compromise, the parties have apparently concluded that § 547(e)(2)(A) may operate for the benefit of the Levinsons as a further exception to the trustee's avoiding powers under § 544(a). To permit such an application would be in effect to rewrite the Code. Section 546(b) expressly provides an exception for perfection to relate back for purposes of § 544; the preference statute, on the other hand, has its own rules regarding grace periods for perfection. *In re Ken Gardner Ford Sales Inc.*, 10 B.R. 632, 643 (Bankr.E.D.Tenn.1981) *aff'd*, 23 B.R. 743 (E.D.Tenn.1982); 4 *Collier on Bankruptcy* § 547.20, 547–88 (15th Ed.1979). Moreover, the legislative comments to § 547(e) recognize, in addition to the statutory language itself, that the rules stated therein are for the specific purposes of the preference section. H.R.Rep. No. 595, 95th Cong., 1st Sess. 374 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 89 (1978). There is simply no basis on which to apply the preference rules beyond their intended scope in order to validate a lien otherwise voidable under § 544(a)(3).

Section 362(b)(3), contrary to assertions of the parties, does not add credence to their position that the preference grace period validates the Levinsons' lien. Section 362(a)(4) prohibits any post-petition acts "to create, perfect, or enforce any lien against property of the estate." As a result, the post-petition recordation of a lien interest generally would be a violation of the automatic stay.[5] However, § 362(b)(3) provides an exception for acts of perfection which are authorized under § 546(b) or § 547(e)(2)(A).[6] If such an exception were not included, the post-petition perfection permitted by § 547(e)(2) and § 546(b) would be nullified. H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51–52 (1978). As previously discussed, § 546(b) and § 547(e)(2) are discrete rules which must be read in the context of the purposes which they serve. Since neither section may be used in this instance to override the effect of § 544(a)(3), the exception to the automatic stay which depends on the successful application of those sections has no relevance here. *See In re Italiano*, 66 B.R. 468, 479–80 (Bankr.D.N.J.1986) (§ 362(b)(3) inapplicable to post-petition actions concerning improperly levied judgment lien where levy could not be cured under any applicable state law); *In re Alberto*, 823 F.2d 712, 722–23 (3rd Cir.1987) (act of recording ship mortgage did not qualify for § 546(b) exclusion and therefore § 362(b)(3) inapplicable).

## CONCLUSION

 Based on the above analysis, the court cannot find that the proposed compromise is fair and equitable to the unsecured creditors of the reorganized debtor as their claims may not be paid in full under the debtor's Plan of Reorganization. Without compromise of the present

---

5. The court makes no finding as to whether the Levinsons' post-petition recordation was a violation of § 362(a)(4), or § 549 as these issues are not presently before the court.

6. Section 362(b)(3) provides in pertinent part: "(b) The filing of a petition under section 301,

302, or 303 of this title ... does not operate as a stay— ... (3) under subsection (a) of this section, of any act to perfect an interest in property to the extent (3) that the trustee's rights and powers are subject to such perfection under section 546(b) of this title, or to the extent that such act is accomplished within the period pro-

lien dispute, and at little cost to the estate, the reorganized debtor will be able to bring $35,000 in proceeds from the prior sale of the property as additional funds available for unsecured creditors. Although the interplay between §§ 544, 546, 547 and 362 may not be easily applied, the issue of the validity of the present lien is nonetheless a limited question of law with little necessity for expense and protracted litigation given the potential return to the estate.[7]

Accordingly, PPS's Motion for Approval of Compromise is denied and the debtor is directed to initiate an action within thirty days to recover the sale proceeds at issue.

vided under section 547(e)(2)(A) of this title...."

**7.** In reaching its conclusion, the court is mindful that in general the bankruptcy judge's responsibility is not to decide the numerous questions of law and fact raised by a motion to compromise, but rather to determine whether the compromise falls below the threshold of reasonableness. *In re Heissinger Resources, Ltd.,* 67 B.R. 378, 383 (C.D.Ill.1986); *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2nd Cir.1983). However, approval of a compromise of claim is inappropriate when the claim is invalid as a matter of law. *In re Walsh Construction, Inc.,*

669 F.2d 1325, 1328 (9th Cir.1982). Had the question of law here been a complex matter open to interpretation or subject to differing court decisions, the success of the litigation, as in the usual instance, would have been in doubt and resolution of the disputed law unnecessary and arguably improper. The underlying dispute in the present compromise, by contrast, involved a single, uncomplicated issue of law, the outcome of which is a certainty. Under such circumstances, the court's assessment of the compromise necessarily included a review of controlling law with respect to the lien's validity.