**In the Matter of Thomas Michael KRIZMANICH & Martha Suzanne Krizmanich, Debtors.**

**Bankruptcy No. 90–11503.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

April 10, 1992.

Daniel J. Skekloff, Charles McNagny, Fort Wayne, Ind., for debtors.

Steve Fink, Fort Wayne, Ind., for Great Western Bank.

Reginald Bishop, Indianapolis, Ind., for F.D.I.C.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

Debtors filed separate petitions for relief under Chapter 11, which are being jointly administered. The matter is before the court to consider a joint motion, filed on behalf of the debtors and Great Western Bank, to approve a proposed settlement agreement, together with the objections thereto, filed on behalf of the Federal Deposit Insurance Corporation. The proposed settlement is designed to resolve the issues raised by Great Western's objections to debtors' claimed exemptions. The exemptions in question include Dr. Krizmanich's interest in an ERISA qualified pension

plan, having a value as of the date of the petition of approximately $785,000.00, and cash value life insurance, having a value of approximately $98,800.00. The objections raise issues concerning the validity, as a matter of state constitutional law, of the statutes upon which the claimed exemptions are based, whether the pension plan is property of the bankruptcy estate or has been excluded from the estate pursuant to 11 U.S.C. § 541(c)(2), and whether or not ERISA has pre-empted the claimed exemption for Dr. Krizmanich's pension plan.

The debtors and Great Western Bank filed a joint motion by which they propose to settle the issues raised by that creditor's objections to the claimed exemptions. Pursuant to the terms of the proposed settlement, Great Western's secured claim is placed at approximately $2,100,000.00 and its unsecured claim is placed at approximately $4,300,000.00. Martha Krizmanich will proceed to have her Chapter 11 case dismissed and, within fifteen (15) days thereafter, she will pay Great Western the sum of $175,000.00 from property that is not property of the estate. Within five days of the date this payment is received, the bank will withdraw its objections to the claimed exemptions. The bank will give Mrs. Krizmanich a covenant not to sue or proceed against her on account of any remaining claims it may have. The debtors, for both themselves and the bankruptcy estate, will also covenant not to sue Great Western for any claims which either they or the estate may have against it. Martha Krizmanich agrees not to file bankruptcy for one year and ten days after the date the $175,000.00 payment is made to the bank. The settlement is conditional upon court approval of the dismissal of Mrs. Krizmanich's case and upon no subsequent action being taken against the bank to recover or disgorge the payment she will be making to it.

Notice of the proposed settlement was issued to all creditors and parties in interest for an opportunity to object. Only the FDIC has done so. The essence of its objection is founded upon the proposition that the proposed settlement is not in the best interest of the estate and the general creditor body, because it will preclude other creditors from participating in potentially substantial assets of the estate. Instead, the FDIC argues that the proposed settlement has been entered into solely to further the individual interests of the debtors and the objecting bank.

In addressing the propriety of the settlement it is important to note who it is that would benefit from the successful prosecution of the bank's objections. If the bank is successful in its objections to the debtors' claimed exemptions, that property will remain part of the bankruptcy estate and its value will be available for the benefit of all creditors, either in connection with a distribution under Chapter 7, should this case be converted from Chapter 11, or in determining the threshold requirements which a confirmable plan must meet in order to be in the best interest of creditors. *See* 11 U.S.C. § 1129(a)(7)(A)(ii). Although Great Western is the only creditor to have objected to the debtors' claimed exemptions, it will not directly benefit from their successful prosecution except as a member of the general creditor body. In other words, the benefits of a successful objection to a debtor's claimed exemptions flow to all creditors of the bankruptcy estate and not just to the creditor or creditors who successfully prosecuted the objection. Ultimately, the FDIC's opposition to the settlement is founded upon the direct benefits that Great Western will receive under the settlement, to the exclusion of the rest of the creditor body.

In opposition to the FDIC's objections, Great Western argues that the general creditor body and the estate as a whole will benefit from the expeditious resolution of the troublesome issues raised by its objections. Resolving those issues at the present time and dismissing its objections will permit the debtors to file a proposed plan and disclosure statement knowing what will be required of them under the best interest test and will save the estate the time and the attorney fees which would be associated with responding to the objections. Great Western argues that these benefits are sufficient to justify the settle-

ment notwithstanding the fact that it will directly receive substantial benefits in connection with the settlement.[1]

This court has previously taken the opportunity to comment upon a creditor's efforts to settle litigation which it is prosecuting on behalf of the general creditor body. *See Matter of Egolf,* 102 B.R. 706 (Bankr.N.D.Ind.1989). There, a creditor had been authorized to prosecute actions seeking to recover fraudulent conveyances on behalf of the bankruptcy estate. It then attempted to settle the issues raised in that litigation for a payment to it in the sum of $35,000.00, from property which was not property of the bankruptcy estate. In refusing to approve the proposed compromise, the court observed:

> Having undertaken an obligation to the general creditor body, [the creditor] should not be permitted to use that position to its own advantage. To do so would be improper. *Egolf,* 102 B.R. at 710.

Precisely the same improprieties which tainted the proposed settlement in *Egolf* taint the settlement which the debtors and Great Western have brought before the court. Great Western has undertaken the obligation to prosecute objections to the debtors' claimed exemptions on behalf of the general creditor body, since its success in that litigation will inure to the benefit of all unsecured creditors. Having done so, it now seeks to compromise that litigation in return for a payment to it of $175,000.00. The only distinguishing feature between this settlement and *Egolf* is that there the court had specifically authorized the creditor to prosecute the action in question. This, in the court's opinion, is a distinction without a difference. It is only by virtue of such an order that the settling creditor would have had standing to prosecute the action, *Matter of Perkins,* 902 F.2d 1254, 1257–58 (7th Cir.1990); all creditors and parties in interest automatically have standing to object to claimed exemptions. *See* 11 U.S.C. § 522(1); Bankr.Rule 4003(b). What the court must be concerned about is

not the source of the creditor's authority for maintaining the action which it seeks to settle but, rather, whether the same parties who would receive the benefits of a successful prosecution will also receive the benefits being conferred by the settlement.

Support for the court's conclusion may be found in those decisions which have refused to permit the settlement of proceedings objecting to a discharge upon terms in which the creditor/plaintiff would receive a private benefit. *See In re Joseph,* 121 B.R. 679 (Bankr.N.D.N.Y.1990); *In re Nicolosi,* 86 B.R. 882 (Bankr.W.D.La. 1988); *In re Moore,* 50 B.R. 661 (Bankr. E.D.Tenn.1985). Like an objection to exemptions, a creditor's successful prosecution of an objection to the debtor's discharge will inure to the benefit of all creditors, not just the plaintiff. These decisions stand for the proposition that a creditor/plaintiff may not compromise such a proceeding in return for a private benefit, such as debtor's consent to a determination that the obligation to the plaintiff represents a nondischargeable debt while all of the debtor's other obligations may be discharged.

Great Western seeks to avoid the force of this authority by relying upon *In re Margolin,* 135 B.R. 671 (Bankr.D.Colo. 1992). There, the plaintiff was prosecuting both an action which would inure to its own benefit, a dischargeability complaint pursuant to § 523(a)(2)(B), and an action which would benefit the general creditor body, an objection to debtor's discharge pursuant to § 727(a). Following notice to creditors the court authorized the compromise of the litigation, through the entry of a judgment finding that the obligation to the plaintiff was a nondischargeable debt and dismissing the objection to discharge.

*Margolin* is easily distinguishable from the matter before the court. In the first instance, unlike the litigation being settled in this case, the settling creditor in *Margolin* was really prosecuting two separate

---

**1.** The court would observe that exactly the same "benefits" to creditors and the bankruptcy estate which Great Western points to would also flow

from the simple withdrawal of its objections, without the concomitant agreements and benefits Great Western is to receive.

actions within the same proceeding. *See In re Harrison*, 71 B.R. 457, 459 (Bankr. D.Minn.1987). The first, the dischargeability proceeding, was solely for its own benefit; the second, the proceeding objecting to discharge, would benefit all creditors generally. Here, Great Western is prosecuting only a single action the benefits of which will flow to all creditors generally. It has not (and, indeed, in view of the procedures surrounding objections to exemptions could not have) combined that proceeding with one which will inure to its own benefit. Further, the *Margolin* Court also determined that, given the unique facts before it, the relief sought by the plaintiff was mutually exclusive. The creditor's case was based upon a financial statement the debtor had given in connection with a loan, which disclosed substantial assets not listed on the debtor's schedules. The complaint sought to except the debt from the scope of debtor's discharge based upon the proposition that the financial statement was materially false. If, however, the financial statement was correct, the creditor sought denial of the discharge based upon the debtor's failure to disclose or account for this property. Thus, given the theory upon which the plaintiff was proceeding, it was not possible to successfully prosecute both claims. *Margolin*, 135 B.R. at 672. Furthermore, the discovery which had been conducted indicated that the debtor had been lying when he gave the bank the financial statement, so that the fundamental proposition upon which the discharge objection had been founded was not correct. *Id.* For these reasons, the court was persuaded to approve the compromise.

A similar scenario, but with decidedly different results, was presented to the bankruptcy court for the Western District of Louisiana in *Nicolosi*, 86 B.R. 882. There the creditor had successfully prosecuted a discharge objection pursuant to § 727(a)(2) but was unsuccessful in the prosecution of its dischargeability complaint. *Nicolosi*, 86 B.R. at 885. Following the district court's affirmance of the bankruptcy court's decision and while the matter was pending upon appeal to the Fifth Circuit a compromise was reached.

By this compromise, substantial payments would be made to the plaintiff in return for which it would dismiss its objection to the discharge of debtors' other obligations. Debtors' other creditors objected to this course of action and sought to be substituted for the plaintiff, so that they could defend the pending appeal. Over the protestations of the settling plaintiff, Judge Boe sustained the objections. Having reviewed the record from the original trial, he determined that there was no basis for finding that plaintiff's obligation was nondischargeable. Given this, he concluded:

> [Plaintiff's] success under section 727 cannot now be used to obtain unwarranted concessions that would not be available to [it] under section 523. *Nicolosi*, 86 B.R. at 886.

Given the apparent lack of merit to the dischargeability action, Judge Boe found it unnecessary to determine whether there could ever be a compromise of a discharge complaint involving the receipt of a private benefit to the complaining creditor. *Nicolosi*, 86 B.R. at 888.

█ A creditor prosecuting an objection to a debtor's discharge does so for the benefit of all. Thus, such "a private creditor assumes something of the role of a trustee." *Harrison*, 71 B.R. at 459. *See also Egolf*, 102 B.R. at 710. A creditor objecting to exemptions assumes similar obligations. It should not be permitted to abdicate those responsibilities by sacrificing the potential benefits it might win for the general creditor body in order to obtain a private benefit solely for itself. *Egolf*, 102 B.R. at 710. *See also* 18 U.S.C. § 152. The "general protection [available to all creditors] cannot be waived by particular creditors whose private greed outruns their community spirit." *In re Levy*, 127 F.2d 62, 63 (3rd Cir.1942).

█ The court's decision concerning the proposed settlement need not be based only upon the "fiduciary role" an objecting creditor assumes when it challenges a debtor's exemptions or upon the public policy concerns associated with the apparent taint of sacrificing community benefits to private interests. The court must also consider the

fairness of the settlement in relationship to the rights and interests of other creditors who are not able to participate in it. *See Matter of A WECO, Inc.,* 725 F.2d 293, 298 (5th Cir.1984); *In re Rajneesh Neo–Sannyas International Commune,* 59 B.R. 49, 54 (Bankr.D.Or.1986). Thus, "[w]hen a settlement involves something other than a cash or promised payment to the estate ... the Court must determine whether similarly situated creditors will be equally treated." *Rajneesh,* 59 B.R. at 52.

The settlement the parties have brought before the court does not comport with this fundamental principle. Debtors' other creditors, who would share the benefits of success, will not be permitted to share in the tangible benefits the settlement will produce, such as the cash payment to Great Western, by giving them the opportunity to receive a similar payment on account of their own claims. Since the proposed settlement violates this fundamental principle, the court would be abusing its discretion if it approved it. *See AWECO,* 725 F.2d at 298.

"The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." *Matter of Energy Co-op., Inc.,* 886 F.2d 921, 927 (7th Cir.1989). The central inquiry in this determination involves "a comparison of the settlement's terms with the litigation's probable costs and probable benefits." *In re American Reserve Corp.,* 841 F.2d 159, 161 (7th Cir. 1987). The court must examine the terms of the proposed settlement, in light of the risks and rewards of not settling, and determine whether the proverbial bird in the hand is worth two in the bush. While this is not and cannot be the subject of a rigid, mathematical analysis, there must, nonetheless, be some type of correspondence between what is being given in connection with the compromise and what might be received if the dispute was prosecuted to its ultimate conclusion. Thus, the consideration being given in connection with the settlement must be "reasonably equivalent" to the value of the disputed claim, by "fall[ing] within the reasonable range of litigation possibilities." *Energy Co-op,* 886 F.2d at 929 (quoting *In re New York, N.H. & H.R. Co.,* 632 F.2d 955 (2nd Cir.1980)).

The settlement which has been put before the court miserably fails this test. There is absolutely no correspondence between what is being given in connection with the settlement and what might be received if the objections to the debtors' claimed exemptions are fully litigated. That litigation will determine only whether certain assets are in or out of the bankruptcy estate. There is no possible permutation the court can conceive of in which the potential outcome of the exemption litigation could result in a direct payment to the bank, a determination of its secured or unsecured claims, the dismissal of Mrs. Krizmanich's case, or a resolution of the estate's claims against the bank. The proposed settlement falls below the lowest point of reasonableness in the range of litigation possibilities; it is not even within the realm of those possibilities.

The court would abuse its discretion if it approved the proposed settlement. The objection must be sustained. An order doing so will be entered.